You Vang YANG, Ia Kue
Yang, Plaintiffs,

v.

William Q. STURNER, Individually and in his capacity as Chief Medical Examiner for the State of Rhode Island, Defendant.

Civ. A. No. 88–0242 P.

United States District Court,
D. Rhode Island.

Nov. 9, 1990.

---

Amato DeLuca, Providence, R.I., for plaintiffs.

Barbara Grady, Asst. Atty. Gen., State of R.I., Providence, R.I., for defendant.

ADDENDUM

PETTINE, Senior District Judge.

On January 12, 1990, this Court released an opinion granting summary judgment on the issue of liability to the plaintiffs, the Yangs, for the emotional distress they suffered as a result of the defendant's, Dr. Sturner's, violation of their First Amendment rights. The facts of the case are set out in this Court's opinion at 728 F.Supp. 845 (D.R.I.1990). In brief, Dr. Sturner, Rhode Island's Chief Medical Examiner, conducted an autopsy on the Yangs' son. This autopsy violated their deeply held religious beliefs. The Yangs are Hmongs, originally from Laos, and believe that autopsies are a mutilation of the body and that as a result "the spirit of Neng [their son] would not be free, therefore his spirit will come back and take another person in his family."

This Court was in the process of researching the case law regarding the damages portion of this opinion. In the course of research, I considered the recent Supreme Court decision of *Employment Division, Department of Human Resources of Oregon v. Smith,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), decided on April 17, 1990, several months after my initial opinion. It is with deep regret that I have determined that the *Employment Division* case mandates that I recall my prior opinion.

My regret stems from the fact that I have the deepest sympathy for the Yangs. I was moved by their tearful outburst in the courtroom during the hearing on damages. I have seldom, in twenty-four years on the bench, seen such a sincere instance of emotion displayed. I could not help but also notice the reaction of the large number of Hmongs who had gathered to witness the hearing. Their silent tears shed in the still courtroom as they heard the Yangs testimony provided stark support for the depth of the Yangs' grief. Nevertheless, I feel that I would be less than honest if I were to now grant damages in the face of the *Employment Division* decision. I

would note, however, that at the time of my January decision, I believe that I was on solid ground in ruling for the Yangs. As Justice Blackmun stated in his dissent, the majority's decision in *Employment Division*, "effectuates a wholesale overturning of settled law concerning the Religion Clauses of our Constitution." *Id.* at 1616 (Blackmun, J. dissenting), *see id.* at 1607 (O'Connor, J. concurring in the judgment) (the Court gave "a strained reading of the First Amendment ... [and] disregard[ed] our consistent application of free exercise doctrine to cases involving generally applicable regulations that burden religious conduct.").

In *Employment Division*, the Supreme Court declined to apply the traditional balancing test used in First Amendment cases and held that the State can prohibit sacramental peyote use by Native Americans under its criminal laws and can thereby deny unemployment benefits to persons discharged for such use without violating the Free Exercise Clause. *Id.* at 1598–1606. It may seem that this holding could be limited to cases involving criminal law violations; however, the language throughout the opinion indicates that "[t]he Court views traditional free exercise analysis as somehow inapplicable to criminal prohibitions ... *and* to state laws of general applicability...." *Id.* at 1616 (Blackmun, J. dissenting) (emphasis added).

While the Supreme Court stressed that the compelling state interest test is still required in other constitutional contexts such as free speech or racial discrimination, it is no longer to be used when a generally applicable law affects religious conduct. *Id.* at 1604. "What it produces in those other fields—equality of treatment, and an unrestricted flow of contending speech—are constitutional norms; what it would produce here—a private right to ignore generally applicable laws—is a constitutional anomaly." *Id.* In a footnote, the Court noted that "it is hard to see any reason in principle or practicality why the government should have to tailor its health and safety laws to conform to the diversity of religious belief, but should not have to tailor its management of public lands, or its administration of welfare programs[.]" *Id.* at 1603–04 n. 2 (citations omitted).

The Supreme Court rejected the notion that the government should be hampered in its implementation of public policy by requiring sensitivity to all religious beliefs:

> The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.' To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is 'compelling'—permitting him, by virtue of his beliefs, 'to become a law unto himself'—contradicts both constitutional tradition and common sense. *Id.* at 1603 (citations omitted).

Of course, the Court did not go so far as to say that a State could not be sensitive to religious beliefs, however, the Court did make it clear such sensitivity, although desirable, is not mandated by the constitution. *Id.* at 1606. Moreover, the Court noted that it is not for the federal courts to determine when such sensitivity is appropriate. *Id.*

In sum, the *Employment Division* opinion stands for the proposition that "generally applicable, religion-neutral laws that have the effect of burdening a particular religious practice need not be justified by a compelling governmental interest...." *Id.* at 1604 n. 3.

While I feel constrained to apply the majority's opinion to the instant case, I cannot do this without expressing my profound regret and my own agreement with Justice Blackmun's forceful dissent. Justice Blackmun points out that the majority distorted long-standing precedent to conclude that:

> strict scrutiny of a state law burdening the free exercise of religion is a 'luxury' that a well-ordered society cannot afford, and that the repression of minority religions is an 'unavoidable consequence of democratic government.' I do not be-

lieve the Founders thought their dearly bought freedom from religious persecution a 'luxury,' but an essential element of liberty—and they could not have thought religious intolerance 'unavoidable,' for they drafted the Religion Clauses precisely in order to avoid that intolerance. *Id.* at 1616 (Blackmun, J. dissenting) (citations omitted).

Justice Blackmun feared the impact of the majority's opinion and hoped "that the Court [was] aware of the consequences, and that its result [was] not a product of overreaction to the serious problems the country's drug crisis has generated." *Id.* (Blackmun, J. dissenting).

One must wonder, as Justice O'Connor did in her concurrence, what is left of Free Exercise jurisprudence when one can attack only laws explicitly aimed at a religious group. "Indeed, few States would be so naive as to enact a law directly prohibiting or burdening a religious practice as such." *Id.* at 1608 (O'Connor, J. concurring in the judgment).

In the instant case, the Rhode Island statute governing autopsies is a generally applicable law. The law is facially neutral. There is no indication that the law was enacted with any animus toward any religious group. The law's application did profoundly impair the Yangs' religious freedom; however, under *Employment Division* I can no longer rule that this impairment rises to a constitutional level. Therefore, I do not see any basis for the Yang's first amendment, equal protection or due process claims. Therefore, the opinion published by this Court on January 12, 1990, 728 F.Supp. 845 (D.R.I.1990), cannot stand as precedent; the same is hereby withdrawn and the case is hereby dismissed with prejudice together with all state pendent claims.