(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TANZIN ET AL. *v.* TANVIR ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 19–71.   Argued October 6, 2020—Decided December 10, 2020

The Religious Freedom Restoration Act of 1993 (RFRA) was enacted in the wake of *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872, to provide a remedy to redress Federal Government violations of the right to free exercise under the First Amendment. Respondents are practicing Muslims who sued under RFRA, claiming that federal agents placed them on the No Fly List for refusing to act as informants against their religious communities. They sought injunctive relief against the agents in their official capacities and monetary damages against the agents in their individual capacities. As relevant here, the District Court found that RFRA does not permit monetary relief and dismissed their individual-capacity claims. The Second Circuit reversed, holding that RFRA's remedies provision encompasses money damages against Government officials.

*Held*: RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities.  Pp. 3–9.

   (a) RFRA's text provides that persons may sue and "obtain appropriate relief against a government," 42 U. S. C. §2000bb–1(c), including an "official (or other person acting under color of law) of the United States," §2000bb–2(1). RFRA supplants the ordinary meaning of "government" with a different, express definition that includes "official[s]." It then underscores that "official[s]" are "person[s]." Under RFRA's definition, relief that can be executed against an "official . . . of the Unites States" *is* "relief against a government." This reading is confirmed by RFRA's use of the phrase "persons acting under color of law," which has long been interpreted by this Court in the 42 U. S. C. §1983 context to permit suits against officials in their individual capacities. See, *e.g.*, *Memphis Community School Dist.* v. *Stachura,* 477 U. S. 299,

305–306.  Pp. 3–5.

    (b) RFRA's term "appropriate relief" is "open-ended" on its face;
thus, what relief is " 'appropriate' " is "inherently context dependent."
*Sossamon* v. *Texas,* 563 U. S. 277, 286.  In the context of suits against
Government officials, damages have long been awarded as appropriate
relief, and though more limited today, they remain an appropriate
form of relief.  The availability of damages under §1983 is particularly
salient here.  When Congress first enacted RFRA, the definition of
"government" included state and local officials.  In order to reinstate
the pre-*Smith* substantive protections of the First Amendment *and* the
right to vindicate those protections by a claim, §2000bb(b), the reme-
dies provision must have encompassed at least the same forms of relief
authorized by §1983.  Because damages claims have always been avail-
able under §1983 for clearly established violations of the First Amend-
ment, that means RFRA provides, as one avenue for relief, a right to
seek damages against Government employees.  The presumption in
*Sossamon*, 563 U. S. 277, is inapplicable because this case does not in-
volve sovereign immunity.  Pp. 5–9.

894 F. 3d 449, affirmed.

    THOMAS, J., delivered the opinion of the Court, in which all other Mem-
bers joined, except BARRETT, J., who took no part in the consideration or
decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 19–71

FNU TANZIN, ET AL., PETITIONERS *v.* MUHAMMAD TANVIR, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[December 10, 2020]

JUSTICE THOMAS delivered the opinion of the Court.

The Religious Freedom Restoration Act of 1993 (RFRA) prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means. 107 Stat. 1488, 42 U. S. C. §2000bb *et seq.* It also gives a person whose religious exercise has been unlawfully burdened the right to seek "appropriate relief." The question here is whether "appropriate relief" includes claims for money damages against Government officials in their individual capacities. We hold that it does.

## I

### A

RFRA secures Congress' view of the right to free exercise under the First Amendment, and it provides a remedy to redress violations of that right. Congress passed the Act in the wake of this Court's decision in *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872, 885–890 (1990), which held that the First Amendment tolerates neutral, generally applicable laws that burden or prohibit

religious acts even when the laws are unsupported by a narrowly tailored, compelling governmental interest. See §2000bb(a). RFRA sought to counter the effect of that holding and restore the pre-*Smith* "compelling interest test" by "provid[ing] a claim . . . to persons whose religious exercise is substantially burdened by government." §§2000bb(b)(1)– (2). That right of action enables a person to "obtain appropriate relief against a government." §2000bb–1(c). A "'government'" is defined to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." §2000bb–2(1).

## B

Respondents Muhammad Tanvir, Jameel Algibhah, and Naveed Shinwari are practicing Muslims who claim that Federal Bureau of Investigation agents placed them on the No Fly List in retaliation for their refusal to act as informants against their religious communities. Respondents sued various agents in their official capacities, seeking removal from the No Fly List. They also sued the agents in their individual capacities for money damages. According to respondents, the retaliation cost them substantial sums of money: airline tickets wasted and income from job opportunities lost.

More than a year after respondents sued, the Department of Homeland Security informed them that they could now fly, thus mooting the claims for injunctive relief. The District Court then dismissed the individual-capacity claims for money damages, ruling that RFRA does not permit monetary relief.

The Second Circuit reversed. 894 F. 3d 449 (2018). It determined that RFRA's express remedies provision, combined with the statutory definition of "Government," authorizes claims against federal officials in their individual capacities. Relying on our precedent and RFRA's broad protections for religious liberty, the court concluded that the

open-ended phrase "appropriate relief" encompasses money damages against officials. We granted certiorari, 589 U. S. \_\_\_ (2019), and now affirm.

## II

As usual, we start with the statutory text. *E.g., Mission Product Holdings, Inc.* v. *Tempnology, LLC*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 8). A person whose exercise of religion has been unlawfully burdened may "obtain appropriate relief against a government." 42 U. S. C. §2000bb–1(c).

### A

We first have to determine if injured parties can sue Government officials in their personal capacities. RFRA's text provides a clear answer: They can. Persons may sue and obtain relief "against a government," §2000bb–1(c), which is defined to include "a branch, department, agency, instrumentality, and *official* (*or other person acting under color of law*) of the United States." §2000bb–2(1) (emphasis added).

The Government urges us to limit lawsuits against officials to suits against them in their official, not personal, capacities. A lawsuit seeking damages from employees in their individual capacities, the Government argues, is not really "against a government" because relief "can be executed only against the official's personal assets." *Kentucky* v. *Graham*, 473 U. S. 159, 166 (1985).

The problem with this otherwise plausible argument is that Congress supplanted the ordinary meaning of "government" with a different, express definition. "'When a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." *Digital Realty Trust, Inc.* v. *Somers*, 583 U. S. \_\_\_, \_\_\_ (slip op., at 9) (quoting *Burgess* v. *United States*, 553 U. S. 124, 130 (2008)). For example, if a statute defines a "State" to include territories and districts, that addition to the plain meaning controls. See, *e.g.,* 15 U. S. C. §267. So too here.

A "government," under RFRA, extends beyond the term's
plain meaning to include officials. And the term "official"
does not refer solely to an office, but rather to the actual
person "who is invested with an office." 10 Oxford English
Dictionary 733 (2d ed. 1989). Under RFRA's definition, re-
lief that can be executed against an "official . . . of the
United States" *is* "relief against a government." 42 U. S. C.
§§2000bb–1(c), 2000bb–2(1).

Not only does the term "government" encompass officials,
it also authorizes suits against "other person[s] acting un-
der color of law." §2000bb–2(1). The right to obtain relief
against "a person" cannot be squared with the Govern-
ment's reading that relief must always run against the
United States. Moreover*,* the use of the phrase "official (*or
other* person . . . )" underscores that "official[s]" are treated
like "person[s]." *Ibid.* (emphasis added). In other words,
the parenthetical clarifies that "a government" includes
both individuals who are officials acting under color of law
*and* other, additional individuals who are nonofficials act-
ing under color of law. Here, respondents sued the former.

The legal "backdrop against which Congress enacted"
RFRA confirms the propriety of individual-capacity suits.
*Stewart* v. *Dutra Constr. Co.*, 543 U. S. 481, 487 (2005). The
phrase "persons acting under color of law" draws on one of
the most well-known civil rights statutes: 42 U. S. C. §1983.
That statute applies to "person[s] . . . under color of any
statute," and this Court has long interpreted it to permit
suits against officials in their individual capacities. See,
*e.g., Memphis Community School Dist.* v. *Stachura*, 477
U. S. 299, 305–306, and n. 8 (1986). Because RFRA uses
the same terminology as §1983 in the very same field of civil
rights law, "it is reasonable to believe that the terminology
bears a consistent meaning." A. Scalia & B. Garner, Read-
ing Law: The Interpretation of Legal Texts 323 (2012). A
suit against an official in his personal capacity is a suit
against a person acting under color of law. And a suit

against a person acting under color of law is a suit against "a government," as defined under RFRA. §2000bb–1(c).

### B

The question then becomes what "appropriate relief" entails. Without a statutory definition, we turn to the phrase's plain meaning at the time of enactment. See *FCC* v. *AT&T Inc.*, 562 U. S. 397, 403 (2011). "Appropriate" means "[s]pecially fitted or suitable, proper." 1 Oxford English Dictionary, at 586; see also Merriam-Webster's Collegiate Dictionary 57 (10th ed. 1996) ("especially suitable or compatible"). Because this language is "open-ended" on its face, what relief is "'appropriate'" is "inherently context dependent." *Sossamon* v. *Texas*, 563 U. S. 277, 286 (2011) (interpreting identical language).

In the context of suits against Government officials, damages have long been awarded as appropriate relief. In the early Republic, "an array of writs . . . allowed individuals to test the legality of government conduct by filing suit against government officials" for money damages "payable by the officer." Pfander & Hunt, Public Wrongs and Private Bills: Indemnification and Govt Accountability in the Early Republic, 85 N. Y. U. L. Rev. 1862, 1871–1875 (2010); see *id.,* at 1875, n. 52 (collecting cases). These common-law causes of action remained available through the 19th century and into the 20th. See, *e.g.*, *Little* v. *Barreme*, 2 Cranch 170 (1804); *Elliott* v. *Swartwout*, 10 Pet. 137 (1836); *Mitchell* v. *Harmony*, 13 How. 115 (1852); *Buck* v. *Colbath*, 3 Wall. 334 (1866); *Belknap* v. *Schild*, 161 U. S. 10 (1896); *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 619–620 (1912) ("The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded").

Though more limited, damages against federal officials remain an appropriate form of relief today. In 1988 the Westfall Act foreclosed common-law claims for damages

against federal officials, 28 U. S. C. §2679, but it left open
claims for constitutional violations and certain statutory vi-
olations.  §§2679(b)(2)(A)–(B).  Indeed, the Act expressly
contemplates that a statute could authorize an action for
damages against Government employees.  §2679(b)(2)(B)
(explaining that the displacement of remedies "does not ex-
tend or apply to a civil action against an employee of the
Government . . . which is brought for a violation of a statute
of the United States under which such action against an in-
dividual is otherwise authorized").

Damages are also commonly available against state and
local government officials.  In 1871, for example, Congress
passed the precursor to §1983, imposing liability on any
person who, under color of state law, deprived another of a
constitutional right.  17 Stat. 13; see also *Myers* v. *Ander-
son*, 238 U. S. 368, 379, 383 (1915) (affirming award of dam-
ages against state election officials).  By the time Congress
enacted RFRA, this Court had interpreted the modern ver-
sion of §1983 to permit monetary recovery against officials
who violated "clearly established" federal law.  *E.g., Procu-
nier* v. *Navarette*, 434 U. S. 555, 561–562 (1978); *Siegert* v.
*Gilley*, 500 U. S. 226, 231 (1991).

This availability of damages under §1983 is particularly
salient in light of RFRA's origins.  When first enacted,
RFRA defined "'government'" to include an "official (or
other person acting under color of law) of the United States,
*a State, or a subdivision of a State.*"  107 Stat. 1489 (empha-
sis added).  It made no distinction between state and federal
officials.  After this Court held that RFRA could not be en-
forced against the States, see *City of Boerne* v. *Flores*, 521
U. S. 507, 511 (1997), Congress narrowly amended the def-
inition "by striking 'a State, or a subdivision of a State.'"
114 Stat. 806.  That context is important because RFRA
made clear that it was reinstating both the pre-*Smith* sub-
stantive protections of the First Amendment *and* the right
to vindicate those protections by a claim.  §2000bb(b).

There is no doubt that damages claims have always been available under §1983 for clearly established violations of the First Amendment. See, *e.g., Sause* v. *Bauer*, 585 U. S. \_\_\_ (2018) (*per curiam*) (reversing grant of qualified immunity in a case seeking damages under §1983 based on alleged violations of free exercise rights and Fourth Amendment rights); *Murphy* v. *Missouri Dept. of Corrections*, 814 F. 2d 1252, 1259 (CA8 1987) (remanding to enter judgment for plaintiffs on a §1983 free speech and free exercise claims and to determine and order "appropriate relief, which . . . may, if appropriate, include an award" of damages). Given that RFRA reinstated pre-*Smith* protections and rights, parties suing under RFRA must have at least the same avenues for relief against officials that they would have had before *Smith*. That means RFRA provides, as one avenue for relief, a right to seek damages against Government employees.

A damages remedy is not just "appropriate" relief as viewed through the lens of suits against Government employees. It is also the *only* form of relief that can remedy some RFRA violations. For certain injuries, such as respondents' wasted plane tickets, effective relief consists of damages, not an injunction. See, *e.g.*, *DeMarco* v. *Davis*, 914 F. 3d 383, 390 (CA5 2019) (destruction of religious property); *Yang* v. *Sturner*, 728 F. Supp. 845 (RI 1990), opinion withdrawn 750 F. Supp. 558 (RI 1990) (autopsy of son that violated Hmong beliefs). Given the textual cues just noted, it would be odd to construe RFRA in a manner that prevents courts from awarding such relief. Had Congress wished to limit the remedy to that degree, it knew how to do so. See, *e.g.*, 29 U. S. C. §1132(a)(3) (providing for "appropriate equitable relief"); 42 U. S. C. §2000e–5(g)(1) (providing for "equitable relief as the court deems appropriate"); 15 U. S. C. §78u(d)(5) (providing for "any equitable relief that

may be appropriate or necessary").*

Our opinion in *Sossamon* does not change this analysis. *Sossamon* held that a State's acceptance of federal funding did not waive sovereign immunity to suits for damages under a related statute—the Religious Land Use and Institutionalized Persons Act of 2000—which also permits "'appropriate relief.'" 563 U. S., at 280, 282. The obvious difference is that this case features a suit against individuals, who do not enjoy sovereign immunity.

The Government also posits that we should be wary of damages against government officials because these awards could raise separation-of-powers concerns. But this exact remedy has coexisted with our constitutional system since the dawn of the Republic. To be sure, there may be policy reasons why Congress may wish to shield Government employees from personal liability, and Congress is free to do so. But there are no constitutional reasons why we must do so in its stead.

To the extent the Government asks us to create a new policy-based presumption against damages against individual officials, we are not at liberty to do so. Congress is best suited to create such a policy. Our task is simply to interpret the law as an ordinary person would. Although background presumptions can inform the understanding of a word or phrase, those presumptions must exist at the time of enactment. We cannot manufacture a new presumption now and retroactively impose it on a Congress that acted 27 years ago.

—————

* Both the Government and respondents agree that government officials are entitled to assert a qualified immunity defense when sued in their individual capacities for money damages under RFRA. Indeed, respondents emphasize that the "qualified immunity defense was created for precisely these circumstances," Brief for Respondents 22, and is a "powerful shield" that "protects all but the plainly incompetent or those who flout clearly established law," Tr. of Oral Arg. 42; see *District of Columbia* v. *Wesby*, 583 U. S. ___, ___–___ (2018) (slip op., at 13–15).

Opinion of the Court

\*      \*      \*

We conclude that RFRA's express remedies provision per-mits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities. The judgment of the United States Court of Appeals for the Sec-ond Circuit is affirmed.

*It is so ordered.*

JUSTICE BARRETT took no part in the consideration or decision of this case.