**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| LAWRENCE SALISBURY, *Plaintiff-Appellant*, | No. 20-55039 |
| | D.C. No. 2:18-cv-08247-CJC-E |
| v. | |
| CITY OF SANTA MONICA, *Defendant-Appellee.* | ORDER AND AMENDED OPINION |

On Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted December 11, 2020
Pasadena, California

Filed April 16, 2021
Amended June 7, 2021

Before: Carlos T. Bea, Amul R. Thapar[*], and
Daniel P. Collins, Circuit Judges.

Order;
Opinion by Judge Bea

---

[*] The Honorable Amul R. Thapar, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[**]

**Fair Housing**

Affirming the district court's summary judgment in favor of the City of Santa Monica, the panel held that the Fair Housing Amendments Act of 1988 does not require landlords to accommodate the disability of an individual who neither entered into a lease nor paid rent in exchange for the right to occupy the premises.

Plaintiff lived with his father in a mobile home on land rented from the City of Santa Monica. Upon his father's death, plaintiff refused to vacate the mobile home park, and he asked the City to accommodate his disability by waiving park rules to allow him to store his vehicle immediately next to his mobile home.

The panel held that, by its plain language, the FHAA does not apply to claims by plaintiffs who never themselves or through an associate entered into a lease or paid rent to the defendant landlord. As to occupants requesting accommodation, the FHAA's disability discrimination provisions apply only to cases involving a "sale" or "rental" for which the landlord accepted consideration in exchange for granting the right to occupy the premises. Applying a federal standard, rather than California landlord-tenant law, the panel concluded that because plaintiff never provided consideration in exchange for the right to occupy a space in the mobile home park, the FHAA did not apply to his claim

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for relief, and the City was not obligated to provide, offer, or discuss an accommodation.

## COUNSEL

Frances M. Campbell (argued), Nima Farahani, and Alexander G. Boone, Campbell & Farahani LLP, Sherman Oaks, California, for Plaintiff-Appellant.

Michelle M. Hugard (argued), Deputy City Attorney; Lance S. Gams, Chief Deputy City Attorney; George S. Cardona, Interim City Attorney; City Attorney's Office, Santa Monica, California; for Defendant-Appellee.

## ORDER

Lawrence Salisbury filed a timely petition for rehearing en banc on May 3, 2021 [Dkt. No. 36]. Judge Collins has voted to deny the petition, and Judge Bea and Judge Thapar so recommend. The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. *See* Fed. R. App. P. 35. The petition for rehearing en banc is **DENIED**, and no further petitions will be entertained.

The Opinion filed on April 16, 2021, is amended as follows:

On page 13, insert "in this case" between "because we conclude application of the FHAA" and "does not turn on the law of the state in which the violation allegedly occurred."

On page 15, note 4, replace "appropriate" in the second sentence with "required," "appropriate" in the third sentence with "applicable," and replace the final sentence with: "Our court has previously noted that the nuances of contemporary state and local law may frustrate the nationwide objectives of federal antidiscrimination statutes like the FHAA. *See Wheeler*, 894 F.3d at 1056 (applying a uniform federal common law rule to the survivorship of federal disability discrimination claims)."

## OPINION

BEA, Circuit Judge:

Lawrence Salisbury suffers from serious spinal conditions that make it painful to walk.[1]  Salisbury lived for many years with his elderly father, James, in a mobile home on rented land in the Mountain View Mobilehome Park ("the Park"), which the City of Santa Monica ("the City") purchased in 2000 to provide housing for low-income persons.  It is undisputed that Salisbury never signed a lease for the land nor successfully paid rent to Park management, or indeed, to anyone, in exchange for the right to reside in the Park.

Upon James's death, Salisbury refused repeated demands to vacate the Park and sued the City for wrongful eviction in California Superior Court based on several

---

[1] This case is an appeal from summary judgment.  In reviewing a grant of summary judgment, "we assume the version of the material facts asserted by the non-moving party." *Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210, 1218 (9th Cir. 2015) (quoting *Mattos v. Agarano*, 661 F.3d 433, 439 (9th Cir. 2011)).

theories of state law implied tenancy. The state court granted summary judgment to the City after determining Salisbury failed to follow procedural claims requirements for suing a municipal defendant. Soon thereafter, Salisbury requested that the City accommodate his disability by waiving Park rules to allow him to store his vehicle immediately next to his mobile home rather than the parking area designated for the unit for which he claimed the right to inhabit. The City denied the request because Salisbury was not an authorized tenant of the Park. Salisbury then brought a claim of disability discrimination in federal court. The district court granted summary judgment to the City after concluding that, under California law, Salisbury was indeed not authorized to reside in the Park.

The question presented in this appeal is whether the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.*, requires landlords to accommodate the disability of an individual who neither entered into a lease nor paid rent in exchange for the right to occupy the premises. We conclude the FHAA applies to rentals only when the rental arrangement is supported by adequate consideration and therefore affirm the judgment of the district court.

## I.  BACKGROUND

This housing dispute dates back to 1974, when James purchased a mobile home and signed a month-to-month lease for Spot 57 in the Park, then under private ownership. The original lease listed James and Salisbury's older brother, Russell, as the only adult occupants of the mobile home. Salisbury and his younger sister, Monique, both teenagers at the time, moved in with James and Russell soon after execution of the lease. Salisbury maintains that he resided continuously in the Park from the 1970s until the present

day, decades after Russell and Monique moved out of the mobile home.

It is undisputed, however, that Salisbury's name never appeared on any leases signed by his father for residency in the Park. In 1988, James signed a new month-to-month lease that expressly prohibited subletting or assignment without the Park's consent and stated that he was the only occupant of Spot 57. In 1990, James signed a resident update form confirming he was the only resident of Spot 57, aside from a cat named Spike. In 2000, the City purchased the Park, classified it as an affordable housing project, and imposed new maximum income and household size restrictions for Park tenants. Existing tenants were exempted from the maximum income restriction on the condition that they sign an estoppel certificate stating the number of persons in their household and promise thereafter not to increase the household's size.[2] James signed an estoppel certificate declaring, under penalty of perjury, that he was the only resident of Spot 57. In 2005, James recertified his compliance with the household size restriction by declaring that he continued to live alone.

It is also undisputed that James paid rent to Park management exclusively in his own name before and after the City's acquisition of the Park. In the mid-2000s, James

---

[2] Estoppel certificates are commonly used by the buyer of a commercial property with residential tenants to confirm the seller's representations as to tenancies and to "serve as a record of each tenant's statements or representations in case disputes should arise between the purchaser, as the new owner of the property, and a particular tenant." Miller & Starr, Cal. Real Estate Forms § 1:64 (2d ed. 2020 update). The estoppel certificate prevents the tenant from later asserting facts or claims different from those recited in the certificate based on the reliance of the buyer on the certification and the representations made therein.

asked the City to include Russell's initials on several rent invoices for unknown reasons. In addition, the City agreed to include Salisbury's initials on several rent invoices sent to Spot 57 from 2008 to 2010. Notwithstanding the inclusion of their initials on rent invoices, neither Salisbury nor Russell ever paid rent on James's behalf.

The City first contested Salisbury's presence in 2011 when other residents complained that Salisbury had violated Park rules by bringing a large dog into the Park. James told the City's property managers that Salisbury had lived in the Park "since 1975" and that the dog was a service animal. The City noted it had no record of Salisbury's residence in that Park and instructed Salisbury to apply for residence either as an income-restricted tenant or as a live-in caregiver for James. Salisbury submitted an incomplete application for residency and ignored the City's request to provide missing financial information required to determine whether Salisbury qualified for residency in the Park as a low-income tenant.[3] Meanwhile, Salisbury acquired title to James's mobile home without notifying the City (in its capacity as the owner of the land) as required to initiate a new lease under Park rules and California's Mobilehome Residency Law, Cal. Civ. Code § 798.74.

James died in April 2013. The City subsequently refused to accept rent checks drawn by Salisbury against James's bank account and repeatedly demanded Salisbury vacate

---

[3] Salisbury does not claim that the City discriminated against him based on disability when it required him to complete the standard residential application process as a condition of being offered a lease for Spot 57. Nor does Salisbury claim his disability prevented him from completing the application, or that the City refused to grant an accommodation that would have allowed him to complete the application.

Spot 57 within sixty days. Salisbury sued the City in California Superior Court in July 2013 for wrongful eviction and related tort and contract theories. As noted above, the court granted summary judgment for the City in January 2015 after concluding Salisbury failed to comply with procedural requirements for claims against a municipal defendant.

Thereafter, the City renewed its demand that Salisbury vacate Spot 57 and began to cite Salisbury for violating traffic rules by improperly parking his personal vehicle on neighboring mobile home sites and in common thoroughfares. Under Park rules, all personal vehicles must be registered with management and parked in assigned spaces. The City attempted to enforce these rules by blocking access to vacant lots with bollards but never towed Salisbury's vehicle nor collected any of the fines attached to the citations.

Salisbury responded to the City's renewed order to vacate in August 2015 by requesting a parking accommodation under the FHAA. In a brief letter, Salisbury informed the City he suffered from spondylolisthesis, spinal osteoarthritis, and disc degenerative disease, all of which made it painful to walk. Accordingly, Salisbury requested the City "remove the barriers to the space next to my unit . . . or that you remove the barriers that have been put in front of my trailer [in the thoroughfare] to prevent me from parking there." The City ignored Salisbury's initial request and subsequent requests made as late as December 2016. Salisbury continued to receive citations until July 2018, when the City sold the Park to a private holding company. The Park's new owner has executed a lease with Salisbury, accepted payment of rent, and granted his requested parking accommodation.

This lawsuit began in September 2018 when Salisbury sued the City and related entities under the FHAA in the U.S. District Court for the District of Central California.  The complaint alleged that the City discriminated against Salisbury based on disability by refusing to grant the requested parking accommodation and sought compensatory damages, punitive damages, equitable relief, and attorneys' fees and costs.  *See* 42 U.S.C. §§ 3604(f)(2)–(3), 3613(a), (c).

Salisbury has never claimed that he entered into a lease with the City or that the City accepted rent from him prior to the sale of the Park.  Instead, Salisbury has maintained that California law somehow established a landlord-tenant relationship between himself and the City prior to the accommodation request in one of three ways.  First, because the Park's prior owners had consented to his residency in the Park as a teenager in the 1970s; second, because the City's failure to initiate unlawful detainer proceedings after discovering Salisbury lived in the Park in 2011 created a tenancy at will; or third, because California's Mobilehome Residency Law barred the City from treating Salisbury as a non-tenant because the City failed to offer him a lease when he acquired title to James's mobile home in 2012.  *See* Cal. Civ. Code §§ 798.74(c), 798.75(d).

After several hearings and the completion of discovery, the district court granted the City's motion for summary judgment.  The court began by holding that under the FHAA, "[a] landlord has no obligation to provide reasonable accommodations to a resident [who] illegally occupies a dwelling."   To prove the City violated its duty to accommodate under the FHAA, therefore, Salisbury bore the burden of proving he lawfully resided in the Park at the time of the accommodation request.  Applying California law, the

court concluded Salisbury presented insufficient evidence to establish a landlord-tenant relationship with the City under any of the state law theories noted above.

Salisbury timely appealed, arguing the FHAA prohibits discrimination against "any person" without regard to the existence of a tenancy, that the district court ignored evidence creating triable issues of fact as to the formation of an implied tenancy under California law, and that the City's repeated refusals to engage in an "interactive process" after the initial request for accommodation were standalone violations of the FHAA. Jurisdiction is proper. *See* 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

We review grants of summary judgment de novo. *Dubois v. Ass'n of Apt. Owners of 2987 Kalakaua*, 453 F.3d 1175, 1178 (9th Cir. 2006). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.  DISCUSSION

Salisbury brought his disability discrimination claim under 42 U.S.C. § 3604(f)(2) and (f)(3)(B), which prohibit "a refusal to make reasonable accommodations . . . when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." We have previously interpreted this language to determine whether a landlord subject to the FHAA's duty of reasonable accommodation fell short of his statutory obligations. In so doing, we have held a failure-to-accommodate plaintiff must show: 1) the existence of a covered handicap; 2) the defendant's knowledge or constructive knowledge of that

handicap; 3) that an accommodation "may be necessary"; 4) that the accommodation is reasonable; and 5) that the defendant refused to make the necessary and reasonable accommodation upon request. *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189–90 (9th Cir. 2021) (quoting *Dubois*, 453 F.3d at 1179). In these cases, the existence of a tenancy was undisputed.

This case, by contrast, presents a threshold question of first impression in this circuit: Whether the FHAA applies at all to claims by plaintiffs who never themselves or through an associate entered into a lease or paid rent to the defendant landlord. The district court found the FHAA presupposed the existence of a valid tenancy as a necessary precondition to applying the statute's duty of reasonable accommodation and determined Salisbury failed to establish an express or implied landlord-tenant relationship under California law. We agree with the district court that Salisbury's claim falls outside the FHAA's domain, but for a different, yet allied reason. We hold that, as to occupants requesting accommodation, the FHAA's disability discrimination provisions apply only to cases involving a "sale" or "rental" for which the landlord accepted consideration in exchange for granting the right to occupy the premises.

## A. The FHAA's "Sale" or "Rental" Requirement

"As usual, we start with the statutory text." *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) (en banc). The FHAA makes it unlawful:

> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap . . . [and]

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]

42 U.S.C. § 3604(f)(1)–(2).   Discriminatory conduct includes "a refusal to permit . . . reasonable modifications of existing premises," "a refusal to make reasonable accommodations . . . necessary to afford such person equal opportunity to use and enjoy a dwelling," and "a failure to design and construct [covered multifamily] dwellings" in a manner accessible to the handicapped. *Id.* § 3604(f)(3)(A)–(C).

"It is a fundamental canon that where the 'statutory text is plain and unambiguous,' a court 'must apply the statute according to its terms.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (quoting *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)).  The relevant operative language of the FHAA bars discrimination "*in* the sale or rental" of a dwelling, "*in* the terms, conditions, or privileges of sale or rental of a dwelling," and "*in* the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(1)–(2) (emphases added).   The preposition "in" limits the scope of the preceding term "[w]ithin the limits or bounds of" the "place or thing" that follows.  Oxford English Dictionary (2d ed. 1989); *see also Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1206 (9th Cir. 2011) ("The word 'in' means to 'express[] relation of presence, existence, situation, inclusion . . . ; inclosed or surround by limits, as in a room.'" (citation omitted)).  The prohibitions and duties enumerated in the following subsection, 42 U.S.C. § 3604(f)(3), modify the meaning of

"[t]o discriminate" in the preceding subsections and are subject to the same "sale" or "rental" limitation.

By its plain language, therefore, the FHAA applies only in cases involving a "sale or "rental" of a dwelling to a buyer or tenant. There is no doubt that the FHAA bars a wide range of discrimination "against any person" and plays an important role in securing equal housing opportunity for handicapped persons. But the statute by its terms regulates only sellers and renters, not every owner of any roof and parcel in the land. When discerning the limits of a statute's domain, no less than when interpreting its substantive requirements, we must presume "the legislature says in a statute what it means and means in a statute what it says there." *Hartpence*, 792 F.3d at 1128 (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)); *see generally* Frank H. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev. 533 (1983).

Salisbury reads the FHAA quite differently. In his view, the FHAA covers "*any* person" denied a reasonable housing accommodation without regard for how that person came to occupy the premises in question. Salisbury argues we must set aside plain meaning in favor of a more expansive reading because courts are bound to give the FHAA a "generous construction" that accomplishes the statute's underlying purpose. *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 212 (1972)). We disagree with Salisbury's conception of the judicial power.

Federal judges undertake to apply the law as it is written, not to devise alternative language that might accomplish Congress's asserted purpose more effectively. "Our task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989); *see also*

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the *specific* issue under consideration."). Settled principles of statutory interpretation place it beyond dispute that the "generous spirit" with which our court interprets the FHAA, *Mobile Home*, 29 F.3d at 1416, is not a license to ignore the text. Where, as here, the plain meaning of a statute indicates a particular result, the "judicial inquiry is complete." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)); *see also CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." (citing *Hartpence*, 792 F.3d at 1128)).

## B. Meaning of "Rental" under 42 U.S.C. § 3602(e)

To determine whether Salisbury's claim involves a "rental" covered by the FHAA, we turn next to the proof required to establish a landlord-tenant relationship within the terms of the statute. The district court applied California law to reject the various state law theories under which Salisbury argued the City somehow inherited or acquiesced in an implied tenancy. We do not pass on the issues of California landlord-tenant law discussed in the decision below, however, because we conclude application of the FHAA in this case does not turn on the law of the state in which the violation allegedly occurred. Instead, we apply a federal standard derived from the FHAA's text and "common-law foundations." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)).

When interpreting a statutory term, we first give effect to statutory definitions and then to the term's "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The FHAA defines "[t]o rent" as "to lease, to sublease, to let and otherwise to grant *for a consideration* the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e) (emphasis added). "[L]ease," "sublease," and "let" are not further defined by the statute, but each term had a settled ordinary meaning when Congress enacted the FHAA: "[a] contract between parties, by which the one conveys lands or tenements to the other . . . usually in consideration of rent or other periodical compensation." Lease, Oxford English Dictionary (2d ed. 1989); *see also* Let ("To grant the temporary possession and use of . . . to another in consideration of rent or hire."); Sublease ("A lease granted by one who is a lessee or tenant."). The FHAA's definition of "[t]o rent" captures these meanings in the catch-all phrase "otherwise to grant *for a consideration* the right to occupy premises not owned by the occupant."

We hold the FHAA applies to rentals only when the landlord or his designee has received consideration in exchange for granting the right to occupy the premises. Consideration is not further defined by the statute, but this term, also, bore a well-established meaning among the states at the time of the FHAA's enactment. The most common form of consideration for a lease is periodic rent. *See* Consideration, Oxford English Dictionary (2d ed. 1989) ("Anything regarded as recompense or equivalent for what one does or undertakes for another's benefit."). The term is somewhat broader, however, and may include other forms of remuneration. *See, e.g.*, *Dixon v. Hallmark Cos.*, 627 F.3d 849, 858 (11th Cir. 2010) (maintaining an apartment building may serve as consideration for the right to occupy

an apartment).   For our purposes, it suffices to say "consideration" as used in the FHAA means a performance consisting of "an act other than a promise, or a forbearance, or the creation, modification, or destruction of a legal relation."  Restatement (Second) of Contracts § 71(3)(a)–(c); *accord* Consideration, Black's Law Dictionary (2d ed. 1910) ("Any benefit conferred, or agreed to be conferred, upon the promisor . . . to which the promisor [i]s not lawfully entitled, or any [new] prejudice suffered." (citing, *inter alia*, Cal. Civ. Code § 1605)).[4]

## C.  Application to Salisbury's Claim

The FHAA's predicate "sale" or "rental" requirement makes short work of Salisbury's refusal to accommodate claim.   As the district court correctly noted, Salisbury conceded that he resided in Spot 57 despite never having entered into a lease to live in the Park and never having paid rent to the City.   The record is also devoid of any evidence that Salisbury performed any act or forbearance other than the payment of rent capable of serving as consideration for a

---

[4] Because the FHAA clearly requires "consideration" to establish a rental, we need not pass on whether the district court properly analyzed California property law in the decision below.  We note, however, that the district court should not have applied contemporary state law without first considering whether a federal common law rule is required in this context.  Although "the existence of related federal statutes" does not "automatically show that Congress intended courts to create federal common-law rules," *Atherton v. FDIC*, 519 U.S. 213, 218 (1997), federal rules may be applicable when the statutory scheme "evidences a distinct need for nationwide legal standards," *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991).  Our court has previously noted that the nuances of contemporary state and local law may frustrate the nationwide objectives of federal antidiscrimination statutes like the FHAA.  *See Wheeler*, 894 F.3d at 1056 (applying a uniform federal common law rule to the survivorship of federal disability discrimination claims).

valid tenancy. Because Salisbury never provided consideration in exchange for the right to occupy Spot 57, the FHAA was inapplicable to his claim for relief; the City was not obligated to provide, offer, or discuss an accommodation.

Notably, Salisbury never claimed the City refused to offer him an equal opportunity to *apply* for a rental. The FHAA bars landlords from refusing to rent or sell an otherwise available premises based on the disability of the prospective renter or buyer prior to an exchange of consideration. *See* 42 U.S.C. § 3604(f)(1). Landlords may deny prospective tenants for failing to comply with generally applicable rules for obtaining a lease but must offer reasonable accommodations when necessary to allow a disabled person equal opportunity to reside in the premises. *Id.* § 3604(f)(3)(b); *see Giebeler v. M&B Assocs.*, 343 F.3d 1143, 1148–59 (9th Cir. 2003) (concluding a landlord violated the FHAA by refusing to make reasonable exception to a general rule prohibiting cosigners). By contrast here, Salisbury's accommodation claim presupposed a tenancy because he already occupied Spot 57 when he requested an accommodation. Salisbury never claimed the City refused to offer him a lease because of his disability. Neither is there any evidence in the record that Salisbury failed to complete an application because the City failed to accommodate aspects of his disability that prevented him from obtaining and filing the necessary paperwork.

Instead, Salisbury argues the district court's conclusion that Salisbury lacked a valid tenancy rests on a misapplication of California law. Citing several state cases, Salisbury argues the City inherited an implied tenancy from the Park's prior owners, and, in any event, was barred from

treating him as a non-tenant by its failure to file an unlawful detainer proceeding and by operation of local rent control laws.  None of these state law issues are relevant to whether Salisbury provided the "consideration" required to establish that he had a "rental" under the FHAA.  Rather, it is "consideration" as understood at the time of the FHAA's enactment that triggers application of the statute to a "rental."  Salisbury failed to provide evidence of such consideration in this case.

The parties also dispute whether Salisbury's requested accommodation was "necessary" or "reasonable" under federal law.  *See United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997) (suggesting parking accommodations for handicapped tenants may be "necessary" and "reasonable"); *cf. Howard*, 988 F.3d at 1190 ("Necessary suggests something that cannot be done without." (citation and quotation marks omitted)); *Giebeler,* 343 F.3d at 1157 ("[A]n accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." (citation and quotation marks omitted)).  Whether Salisbury's requested accommodation was "necessary" and "reasonable" is immaterial, however, because the City was not obligated to make any accommodations absent its acceptance of consideration from Salisbury in exchange for the right to occupy Spot 57.

Finally, Salisbury argues the City's repeated refusals to engage in an "interactive process" to ascertain the precise scope of the accommodation required to ensure equal opportunity for use and enjoyment of Spot 57 constituted standalone violations of the FHAA.  The district court did not separately address this argument.  However, during the pendency of this appeal, our court has definitively rejected

the "interactive process" theory as a separate, "standalone" font of FHAA liability. *Howard*, 988 F.3d at 1192 ("[W]e hold that there is no 'standalone' liability under the FHAA for a landlord's failure to engage in an 'interactive process' with a tenant."). In any event, Salisbury's "interactive process" theory would fail for the same reason as his primary failure to accommodate claim—in the absence of a tenancy supported by consideration, the City was not obligated by the FHAA to discuss the requested accommodation.[5]

## IV.  CONCLUSION

Salisbury failed to establish that the FHAA applies to his discrimination claim. We therefore **AFFIRM** the judgment of the district court.

---

[5] Because the court affirms the judgment below, we have no occasion to rule on Salisbury's request that this case be remanded to a different district judge to preserve the appearance of justice. *See, e.g.*, *Disability Rights Mont., Inc. v. Batista*, 930 F.3d 1090, 1100 (9th Cir. 2019). We note, however, that the hearing excerpts cited by Salisbury to buttress allegations of closedmindedness on the part of Judge Carney fall short of demonstrating impropriety by a country mile. Indeed, the record shows the contrary is true. Judge Carney was signally patient and thorough in his detailed perusal of Salisbury's claims.