RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MICHAEL POFFENBARGER, on behalf of himself and others similarly situated,

　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

FRANK KENDALL, III, in his official capacity as Secretary of the Air Force; JOHN D. DEGOES, in his official capacity as Acting Surgeon General of the Air Force; JOHN P. HEALY, in his official capacity as Commander, Air Force Reserve Command; MAJOR GENERAL D. SCOTT DURHAM, in his official capacity as Commander, 4th Air Force; LIEUTENANT COLONEL MICHAEL R. RUBELING, in his official capacity as Commander, 445th Operations Support Squadron; COLONEL DOUGLAS A. PERRY, in his official capacity as Commander, 445th Airlift Wing; UNITED STATES OF AMERICA,

　　　　　　　　　Defendants-*Appellees*.

No. 24-3417

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Dayton.
No. 3:22-cv-00001—Matthew W. McFarland, District Judge.

Decided and Filed:  May 12, 2025

Before:  KETHLEDGE, BUSH, and MURPHY, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  Christopher Wiest, CHRIS WIEST, ATTY AT LAW, PLLC Covington, Kentucky, Thomas B. Bruns, BRUNS CONNELL VOLLMAR & ARMSTRONG, Cincinnati, Ohio, Aaron Siri, Elizabeth A. Brehm, Wendy Cox, SIRI & GLIMSTAD LLP, New York, New York, Zachary Gottesman, GOTTESMAN LAW, Cincinnati, Ohio, for Appellant.  Sarah Carroll, Casen B. Ross, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.  Michael Poffenbarger, a First Lieutenant in the Air Force Reserve, brought this suit alleging that the Air Force's COVID-19 mandate, as applied to him, violated the Religious Freedom Restoration Act (RFRA) and the First Amendment.  The Air Force later rescinded that mandate, and the district court dismissed the case as moot.  We affirm the dismissal, though on different grounds.

I.

In August 2021, at the direction of President Biden, Secretary of Defense Lloyd Austin mandated that all members of the armed forces be vaccinated against COVID-19.  The Secretary of the Air Force (then Frank Kendall, the lead defendant when this suit was filed) accordingly mandated that all the Air Force's active-duty service members and reservists (including members of the Air Guard) be vaccinated.  Under the Department of the Air Force's guidelines, service members could seek exemptions from the mandate on medical, administrative, or religious grounds.  In the months that followed, the Department granted medical and administrative exemptions "relatively freely"; but as of September 2022, on the record before us then, the number of exemptions the Department had granted on religious grounds stood "at zero." *Doster v. Kendall*, 48 F.4th 608, 610 (6th Cir. 2022).  Meanwhile, service members who refused the vaccination without an exemption were subject to various punitive measures—including separation from the Air Force (*i.e.*, termination).

Poffenbarger sought a religious exemption, which the Air Force denied.  But he refused the vaccination nonetheless.  In response, the Air Force gave him a letter of reprimand and placed him on "No Pay/No Points status"—an inactive status on which he could not attend drills and thus could not earn pay and retirement points.  Poffenbarger soon brought this suit, claiming that the vaccine mandate as applied to him violated RFRA and the First Amendment.  As relief, he sought a declaration to that effect, an injunction barring the defendants from enforcing the mandate against him, and "damages."  More to the point here, Poffenbarger also sought

"injunctive relief" that would require the defendants to "restore any lost credit for points or pay" that he had "lost due to Defendants' illegal actions." Am. Compl., R. 38. The district court thereafter entered a preliminary injunction barring the Air Force from taking further punitive action against Poffenbarger during the pendency of his case.

Meanwhile, in the same district court, the same attorneys filed a companion case challenging the mandate on the same grounds. *See Doster v. Kendall*, 596 F. Supp. 3d 995 (S.D. Ohio 2022). In that case, the district court certified a class of affected Air Force service members and enjoined the Department from taking further punitive action against them during the pendency of that case. *See Doster v. Kendall*, No. 1:22-CV-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022). In September 2022, we denied the Department's motion for an emergency stay of the district court's preliminary injunctions in *Doster*. *See Doster*, 48 F.4th at 610. Two months later, we affirmed those injunctions on the merits. *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022).

The following month, however, Congress enacted legislation that directed the Secretary of Defense to rescind the military's COVID-19 vaccine mandate. Pub. L. No. 117-263, § 525. The Secretary complied with that directive on January 10, 2023, and the Air Force followed suit. As a result, the Supreme Court vacated our decision in *Doster* on mootness grounds. *See Kendall v. Doster*, 144 S. Ct. 481 (2023) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)). We remanded the case to the district court with instructions to vacate its preliminary injunctions on those same grounds.

Thereafter, the district court ordered briefing as to whether this case as a whole was moot. *See generally Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc). The court held it was and dismissed it. This appeal followed.

II.

A.

We review the district court's dismissal de novo. *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018).

1.

Under Article III, the "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam) (citation omitted). "Thus, when a case at first presents a question concretely affecting the rights of the parties, but—as a result of events during the pendency of the litigation—the court's decision would lack any practical effect, the case is moot." *Ohio v. EPA*, 969 F.3d 306, 308 (6th Cir. 2020).

Poffenbarger argues his case is not moot because he has not received the pay and retirement points for the drill weekends—specifically, $4,346.16 in drill pay and 24 retirement points—that he missed when the Air Force assigned him to inactive status (after his refusal to take the vaccine). And here—subject to the government's defense of sovereign immunity—we have power to enter an order granting him that relief. Hence his case is not moot. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 394 (1981).

2.

The government argues that Poffenbarger's claim for drill pay and retirement points is barred by federal sovereign immunity. That claim was asserted against these defendants—the Secretary of the Air Force and several Air Force officers—solely in their official capacities. *See* Am. Compl., R.38 ¶¶ 4, 28. Federal officials in their official capacity fall within the government's sovereign immunity. *See Dugan v. Rank*, 372 U.S. 609, 621-22 (1963); *see also Tanzin v. Tanvir*, 592 U.S. 43, 51-52 (2020). The question, then, is whether the United States has waived its immunity as to this claim. *See Collin v. Comm'r of Soc. Sec.*, 881 F.3d 427, 429 (6th Cir. 2018).

A "waiver of sovereign immunity must be unequivocally expressed in statutory text." *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (internal quotation marks omitted). The Religious Freedom Restoration Act has waived the federal government's immunity to some extent; in this appeal, as in *Cooper*, "the question at issue concerns the *scope* of that waiver." *Id.* at 291. RFRA's waiver provides in relevant part that a "person whose religious exercise has been burdened in violation of" the Act may "obtain appropriate relief against a government."

42 U.S.C. § 2000bb-1(c). Here, these defendants, in their official capacities, fall within the Act's definition of a "government." *See Tanzin*, 592 U.S. at 47. Whether the United States has waived its immunity as to Poffenbarger's claim for lost drill pay and retirement points, therefore, depends on whether that relief, against these officials, is "appropriate relief" as the Act uses that term.

We begin (and later end) with what that term does *not* include—namely, claims against the federal government for money damages. In *Sossamon v. Texas*, the Supreme Court held that the phrase "appropriate relief" as used in a related statute (the Religious Land Use and Institutionalized Persons Act) did not "unequivocally express[]" an intent to waive the States' "sovereign immunity to suits for damages." 563 U.S. 277, 288 (2011). Meanwhile, every circuit court to have reached the issue (six of them, at last count) has held that the same phrase in "RFRA does not authorize damages suits against the United States[.]" *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1050-51 (7th Cir. 2025) (collecting cases). We agree: "appropriate relief" as used in RFRA is too vague a phrase to waive unequivocally the federal government's immunity from damages suits.

Poffenbarger's claim for lost drill pay and retirement points is therefore barred if that relief would amount to money damages. By contrast, if that relief would arise in equity, it could be "appropriate relief." *See Sossamon*, 563 U.S. at 285. The aims of the two kinds of relief are different. As Joseph Story observed: "Courts of Equity will interfere by way of injunction to prevent wrongs; whereas Courts of Common Law can grant redress only, when the wrong is done." Story, 1 *Commentaries on Equity Jurisprudence* § 30 (1836). Thus, equity seeks to prevent a legal wrong, or to change the status quo so that what was wrong becomes right; whereas legal damages leave the wrong in place but afford the plaintiff compensation for it. *See Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988).

That a claim seeks an award of money does not necessarily mean it is a claim for money damages. To the contrary, the "Supreme Court has 'long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order for the recovery of specific property or monies.'" *Collin*, 881 F.3d

at 429 (quoting *Bowen*, 487 U.S. at 893 (cleaned up)).  In *Bowen*—over a strong dissent from Justice Scalia—the Supreme Court cited Judge Bork for the proposition that "[d]amages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'"  487 U.S. at 895 (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985) (quoting in turn D. Dobbs, *Handbook on the Law of Remedies* 135 (1973))).

As we noted in *Collin*, however, "[t]his distinction is harder to make when, as here, the very thing to which the plaintiff says [he] is entitled is the payment of money."  881 F.3d at 429.  Money is usually fungible, just as commodities are, and thus is hard to characterize as a distinct thing—a *res*—to which a plaintiff is entitled.  *See Bowen*, 487 U.S. at 919 n.3 (Scalia, J., dissenting).  Moreover, an award of money damages is usually adequate compensation for a defendant's failure to pay money, which usually forecloses equitable relief.  *See id.* at 917.  But the Supreme Court has held that—when the defendant has withheld a specific sum that a statute obligated the defendant to pay all along—then an order directing the defendant to pay that sum can be equitable relief rather than legal.  In *Bowen*, for example, the Court explained:

> The State's suit to enforce § 1396b(a) of the Medicaid Act, which provides that the Secretary [of Health and Human Services] 'shall pay' certain amounts for appropriate Medicaid services, is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce *the statutory mandate itself*, which happens to be one for the payment of money.

*Id*. at 900 (second emphasis added).

Likewise, in Judge Bork's case, Maryland was "seeking funds to which a statute allegedly entitle[d] it, rather than money in compensation for the losses" that Maryland would have suffered "by virtue of the withholding of those funds."  *Id*. at 901 (quoting *Md. Dep't of Hum. Res.*, 763 F.2d at 1446).  In both cases, therefore, the failure to pay the withheld sum was *itself* the legal wrong.

Here, by contrast, "the statutory mandate is different in kind."  *Collin*, 881 F.3d at 429.  Poffenbarger seeks to enforce RFRA, which mandates not the payment of money but the

government's forbearance from interference with "a person's exercise of religion[.]" 42 U.S.C. § 2000bb-1(a). Nor were the drill pay or retirement points anything—much less "the very thing"—to which Poffenbarger "was entitled" under RFRA. *Bowen*, 487 U.S. at 895 (citation omitted). Indeed, as a reservist, under the "military pay statutes," he had no entitlement to any compensation for drills that he did not "actually attend[.]" *Palmer v. United States*, 168 F.3d 1310, 1313-14 (Fed. Cir. 1999). That was true even if (as Poffenbarger alleges here) he was "wrongfully removed" from "part-time reserve duty in a pay billet." *Id.* at 1314. Hence the relief he seeks would not enforce a statutory mandate that "happens to be one for the payment of money." *Bowen*, 487 U.S. at 900.

Instead, Poffenbarger's statutory entitlement (subject to a narrow exception) was to practice his religious faith without substantial interference from the government. *See* 42 U.S.C. § 2000bb-1(a). The alleged legal wrong in this case was that the Department of the Air Force substantially burdened his religious practice nonetheless. He seeks drill pay and retirement points not to prevent or undo that wrong, but as compensation for what he "lost due to Defendants' illegal actions." Am. Compl., R. 38. The relief he seeks now, therefore, is retrospective compensation for a previous legal wrong—which is to say it is money damages. *See Collin*, 881 F.3d at 429. That is true for the retirement points too: those would be retrospective compensatory relief, without any concomitant injunction that the government pay Poffenbarger some additional specified amount during his retirement. (Instead the points would impose their own obligation on the government under a different statutory regime.)

Poffenbarger's arguments to the contrary are without merit. For reasons that *Palmer* itself makes clear, Poffenbarger's lack of entitlement under the military pay statutes (as a reservist) makes his case distinguishable from cases (like *Schelske v. Austin*, 2023 WL 5986462 (N.D. Tex. Sept. 14, 2023)) involving active-duty service members. 168 F.3d at 1313-14. Moreover, contrary to his contention here, "a government official or attorney cannot waive the sovereign immunity of the federal government[.]" *Gaetano v. United States*, 994 F.3d 501, 508 (6th Cir. 2021). Nor does judicial estoppel apply, since the district court rejected the government's prior argument that Poffenbarger says conflicts with its argument now. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The relief that Poffenbarger now seeks is

therefore relief to which the government remains immune.

The district court's judgment is affirmed.