**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

LAIDLAW'S HARLEY DAVIDSON SALES, INC.,

*Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant.*

No. 20-73420

Tax Ct. No. 14616-14L

OPINION

---

Appeal from a Decision of the
United States Tax Court

Argued and Submitted December 6, 2021
Pasadena, California

Filed March 25, 2022

Before: Marsha S. Berzon, Carlos T. Bea, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Berzon

## SUMMARY[*]

### Tax

The panel reversed a decision of the Tax Court granting summary judgment to a taxpayer, in a case involving when a supervisor must provide the written approval required by 26 U.S.C. § 6751(b) before the Internal Revenue Service assesses certain penalties.

Taxpayer was required to disclose its participation in a purported welfare benefit plan ("Plan") as a "listed transaction." Taxpayer initially did not disclose its participation in the Plan, but later acknowledged that the Plan was a listed transaction. A Revenue Agent (RA) made the initial determination to assert a penalty for failure to disclose. The RA so notified taxpayer by issuing a "30-day letter." Although the letter stated that if the taxpayer took no action by the 30-day response date, "we will assess the penalty and begin collection procedures," no supervisor had yet provided the written approval for the penalty as required by § 6751(b). The RA's immediate supervisor provided the written approval after the 30-day period had expired, and after taxpayer had submitted a letter protesting the proposed penalty.

Taxpayer's administrative appeal was unsuccessful, the IRS assessed the penalty, then issued a notice of intent to levy. After a collection-due-process (CDP) hearing, taxpayer filed a petition in the Tax Court challenging the Appeals Office's notice of determination from the CDP

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

hearing. Following a remand for the Appeals Office to consider certain issues not raised in this appeal, and a supplemental notice of determination, the Tax Court agreed that the IRS had not complied with the written supervisory requirement in § 6751(b), and granted summary judgment in favor of taxpayer.

The panel held that § 6751(b) requires written supervisory approval before assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment. Here, the supervisor gave written approval of the initial penalty determination before the penalty was assessed and while she still had discretion to withhold approval. The panel concluded that the IRS had satisfied § 6751(b). Accordingly, the panel reversed the Tax Court's grant of taxpayer's motion for summary judgment, and remanded for further proceedings.

Judge Berzon dissented, and would have affirmed the Tax Court's judgment for different reasons. Judge Berzon would read the statute to require that a supervisor personally approve the "initial determination" of a penalty by a subordinate, or else no penalty can be assessed based on that determination, whether the proposed penalty is objected to or not. Because the 30-day letter in this case made clear that the initial determination would have operative effect unless objected to, supervisory approval was required at a time when it would be meaningful—before the letter was sent. Judge Berzon explained that this reading of the statute is consistent with Congress's purpose of preventing threatened penalties never approved by supervisory personnel from being used as a "bargaining chip" by lower-level staff.

**COUNSEL**

Jacob Earl Christensen (argued), Francesca Ugolini, and Kathleen E. Lyon, Attorneys, Tax Division; David A. Hubbert, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Respondent-Appellant.

William J. Wise (argued), Chicago, Illinois, for Petitioner-Appellee.

**OPINION**

BEA, Circuit Judge:

Section 6751(b)(1) of the Internal Revenue Code ("I.R.C.") (26 U.S.C.), states that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing)" by a supervisor. At issue in this case is exactly *when* the supervisor must provide the approval. The Tax Court granted Laidlaw's Harley Davidson Sales, Inc. ("Taxpayer") summary judgment because it held that § 6751(b)(1) "requires the [Internal Revenue Service ("IRS")] to obtain written supervisory approval before it formally communicates to the taxpayer its determination that the taxpayer is liable for the penalty." On appeal, the Commissioner of Internal Revenue ("Commissioner") argues that § 6751(b)(1) requires supervisory approval only before a penalty is assessed and while the supervisor retains discretion whether to approve of the penalty determination, which in this case the supervisor retained even after the IRS formally communicated its determination of liability to Taxpayer. We have jurisdiction under I.R.C. § 7482(a)(1) and reverse.

## I. BACKGROUND

The facts of this case are not in dispute. Taxpayers must disclose participation in transactions designated by the IRS as "listed transactions" by attaching a disclosure statement to their return for each taxable year in which they participate in such a transaction. I.R.C. § 6011(a); 26 C.F.R. § 1.6011-4(a), (b)(2), (e). The penalty for a corporation's failure to disclose a reportable transaction is generally 75% of the decrease in tax shown on the return as a result of the transaction, but must be at least $10,000 and at most $200,000. I.R.C. § 6707A(a)–(b).

In 1999, Taxpayer became a participating employer in a purported welfare benefit plan called the Sterling Benefit Plan ("Plan"). The IRS later determined that the Plan was the same as, or substantially similar to, the tax avoidance transactions designated as "listed transactions" in the IRS's Notice 2007-83 and that a taxpayer participating in the Plan would be subject to a penalty under § 6707A if it did not disclose its participation on its tax return. *See Our Country Home Enters., Inc. v. Comm'r*, 145 T.C. 1, 57, 64 (2015) (holding that the Plan was "substantially similar to the transaction described in Notice 2007-83").

The IRS issued Notice 2007-83 on November 5, 2007. Taxpayer filed its return for the 2007–2008 fiscal year on February 16, 2009, without disclosing its participation in the Plan. In December 2010, Taxpayer filed several Reportable Transaction Disclosure Statements (IRS Form 8886), in which Taxpayer first disclosed to the IRS its participation in the Plan during the fiscal years ending in 1999 and 2005–2008. Taxpayer then acknowledged that the Plan was a listed transaction.

Revenue Agent Czora ("RA Czora") examined Taxpayer's return for potential liability for a penalty under § 6707A due to the failure to include reportable transaction information with its original 2007–2008 fiscal year return, filed in 2009. She made the initial determination for purposes of § 6751(b)(1) to assert the § 6707A penalty against Taxpayer for $ 96,900. RA Czora notified Taxpayer of the proposed penalty by issuing a so-called "30-day letter," dated May 26, 2011.

The letter included threatening language that, it turns out, overstated the IRS's position. The letter stated: "We are proposing the assessment of a penalty under IRC section 6707A (a) for failing to disclose [a] reportable transaction." If Taxpayer agreed with the penalty, the letter instructed Taxpayer to sign and return a form waiver of restrictions on assessment and collection and send payment to the United States Treasury. If Taxpayer did not agree with the penalty, the letter stated Taxpayer could request a conference with the IRS Appeals Office by filing a written protest of the penalty. Alternatively, Taxpayer could seek review in either a U.S. District Court or the U.S. Court of Federal Claims by fully paying the penalty and filing a claim for a refund. However, the letter also stated that if Taxpayer took no action by the 30-day response date (June 27, 2011), "we will assess the penalty and begin collection procedures."

RA Czora enclosed an examination report with the 30-day letter, which included (1) a Form 4549-A, Income Tax Discrepancy Adjustments, showing her computation of the proposed penalty based on the claimed income tax benefit resulting from Taxpayer's participation in the Plan, and (2) a Form 886-A, Explanation of Items, explaining the basis for the proposed penalty. The Form 886-A attached to RA Czora's 30-day letter identifies as the "government's

position" that "[t]he Taxpayer is subject to the penalty under section 6707A" and concludes that the "Taxpayer is liable for the penalty under section 6707A in the amount of $96,900.00."

But, at the time RA Czora sent the letter, it could not have been guaranteed that, as the letter stated, if Taxpayer took no action by the June 27, 2011, deadline, "we will assess the penalty and begin collection procedures." This is because I.R.C. § 6751(b)(1) provides that certain penalties, including penalties under § 6707A, cannot be assessed without written supervisory approval. And, as it turns out, no supervisor had yet provided written approval of the § 6707A penalty that the letter represented would be assessed against Taxpayer.

On July 21, 2011, and after the 30-day period had expired, Taxpayer submitted a letter protesting the proposed penalty and requesting a conference with the Appeals Office. On August 23, 2011, about a month after Taxpayer wrote to protest the proposed penalty, RA Czora's immediate supervisor ("Supervisor Korzec"), signed a Form 300, Civil Penalty Approval Form, providing written approval of the proposed penalty. The next day, Supervisor Korzec transferred the case to the Appeals Office. Taxpayer's administrative appeal was unsuccessful, and, in August 2013, the Appeals Office recommended assessment of the § 6707A penalty. The IRS assessed the penalty in the amount of $96,900 on September 16, 2013.

Taxpayer did not pay the penalty after notice and demand, and the IRS issued a notice of intent to levy and notice of Taxpayer's right to a collection-due-process ("CDP") hearing before the Appeals Office. Taxpayer timely requested a CDP hearing, which was held on May 9, 2014. On May 21, 2014, the Appeals Office sustained the

proposed levy, and stated that the Appeals Office "obtained verification from the IRS office collecting the tax that the requirements of any applicable law, regulation or administrative procedure with respect to the proposed levy . . . have been met," in accordance with I.R.C. § 6330(c)(1).[1]

In June 2014, Taxpayer timely filed a petition in the Tax Court challenging the Appeals Office's notice of determination from the CDP hearing. The Tax Court remanded the matter to the Appeals Office to consider certain statute-of-limitations and penalty-rescission arguments raised by Taxpayer. On remand, the Appeals Office again sustained the proposed levy in a supplemental notice of determination. The supplemental notice of determination expressly determined that the § 6707A penalty was validly assessed after being approved in writing by RA Czora's immediate supervisor in accordance with § 6751(b)(1). Following the supplemental notice of determination, the parties stipulated in the Tax Court to a reduction in the amount of the penalty at issue to $10,000— the minimum amount imposed by § 6707A. The Tax Court thereafter permitted Taxpayer to file an amended petition. In the amended petition, Taxpayer argued that the IRS had not complied with the written supervisory approval requirement in § 6751(b)(1) and that the Appeals Office had, therefore, abused its discretion in sustaining the proposed levy. Taxpayer moved for summary judgment on that ground.

The Tax Court granted summary judgment to Taxpayer, holding that the Appeals Office abused its discretion in sustaining the collection action, and disallowed the penalty.

---

[1] I.R.C. § 6330(c)(1) states: "[t]he appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."

The Tax Court held that the Appeals Office erred in verifying that all applicable laws and administrative procedures had been followed for collection of the penalty in accordance with § 6330(c)(1), because the supervisory approval of the penalty was untimely under § 6751(b)(1).

The Tax Court rejected the Commissioner's argument that § 6751(b)(1) requires that the IRS secure supervisory approval only before the assessment of a penalty. The Tax Court reasoned that the statute's legislative history, as analyzed in *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017), "strongly rebuts" the Commissioner's argument because the statute "would make little sense if it permitted approval of an 'initial' penalty determination up until and even contemporaneously with the IRS's final determination." The Tax Court also rejected the Commissioner's argument that under *Chai* the timeliness of written supervisory approval hinges on whether the supervisor retained authority to give approval because "[t]o so suggest would be to ignore the paramount role that the legislative history of section 6751(b)(1) played in *Chai*'s analysis."

Relying on its previous decision in *Clay v. Commissioner*, 152 T.C. 223 (2019), and other Tax Court precedent, the Tax Court ruled that supervisory approval of an assessable penalty is required before the IRS "formally communicates to the taxpayer its determination that the taxpayer is liable for the penalty." The Tax Court held that RA Czora's 30-day letter "embodied the initial determination" to assert the § 6707A penalty because it was "the first formal communication by the IRS of the conclusion" that the § 6707A penalty applied to Taxpayer. Accordingly, the court ruled that Supervisor Korzec's written approval of the penalty after that communication to

Taxpayer was untimely, thus invalidating the penalty assessment. The Tax Court entered an order granting Taxpayer's motion for summary judgment and a decision holding that the proposed levy was not sustained and that Taxpayer is not liable for the § 6707A penalty. The Commissioner now appeals.

## II.  STANDARD OF REVIEW

"We review the Tax Court's decision 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *Mazzei v. Comm'r*, 998 F.3d 1041, 1054 (9th Cir. 2021) (quoting I.R.C. § 7482(a)(1)). Accordingly, we review the Tax Court's conclusions of law, including interpretations of the I.R.C., de novo. *Knudsen v. Comm'r*, 793 F.3d 1030, 1033 (9th Cir. 2015).

## III.  ANALYSIS

As Justice Kagan has stated, "we're all textualists now."[2] When interpreting a statute, "our inquiry begins with the statutory text, and ends there as well if the [statute's] text is unambiguous." *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) (en banc) (alteration in original) (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)).

Section 6751 imposes notice and supervisory approval requirements on the assessment of a host of tax penalties, including a penalty for failure to report participation in a

---

[2] Justice Elena Kagan, The Scalia Lecture: A Dialogue with Justice Kagan on the Reading of Statutes at 8:28 (Nov. 17, 2015), http://today.law.harvard.edu/in-scalia-lecture-kagan-discusses-statutory -interpretation [http://perma.cc/3BCF-FEFR].

listed transaction under § 6707A. At issue here is the supervisory approval requirement of § 6751(b)(1), which provides:

> No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

In this statute, "assessed" refers to a ministerial function: "the formal recording of a taxpayer's tax liability on the tax rolls," which is "the last of a number of steps required before the IRS can collect" a tax or penalty from a taxpayer. *Chai*, 851 F.3d at 218; *see also Roth v. Comm'r*, 922 F.3d 1126, 1131 (10th Cir. 2019).

The Commissioner argues that in this case § 6751(b)(1) permitted written supervisory approval at any time before the assessment of the penalty. However, the Commissioner acknowledges that because the initial determination must be "approved" by a supervisor, a penalty cannot be assessed unless supervisory approval occurs at a time when the supervisor still has discretion whether to approve the subordinate IRS official's initial penalty determination.[3]

We agree that a supervisor cannot truly approve of a penalty determination without also possessing discretion to withhold approval. Accordingly, a supervisor cannot always satisfy § 6751(b)(1) by waiting to provide written approval

---

[3] We use the term "discretion" here to mean a power or authority to approve, which includes the power or authority *not* to approve.

until just before the moment of assessment. For example, an earlier deadline for supervisory approval might be required when the penalty at issue is subject to the I.R.C.'s deficiency regime.**[4]** But the § 6707A penalty at issue in this case is not subject to the I.R.C.'s deficiency procedures. And Taxpayer does not argue that Supervisor Korzec lacked discretion to give written approval for any other reason. Accordingly, we conclude that Supervisor Korzec had discretion to approve RA Czora's initial determination when Supervisor Korzec signed the Civil Penalty Approval Form on August 23, 2011.**[5]**

---

**[4]** If the Commissioner determines that a taxpayer owes more tax than the taxpayer has paid, the Commissioner may send the taxpayer a notice of deficiency. I.R.C. § 6212(a). But once the notice is sent, the Commissioner begins to lose discretion over whether the penalty is assessed. If the taxpayer does not file a petition with the Tax Court within 90 days, the Code provides that "the deficiency . . . shall be assessed." I.R.C. § 6213(c). Alternatively, if the taxpayer files a timely petition in the Tax Court, the IRS generally cannot assess the deficiency "until the decision of the Tax Court has become final." I.R.C. § 6213(a). And, at the conclusion of the Tax Court proceedings, the Code provides that "the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed." I.R.C. § 6215(a). When the law provides that a penalty "shall be assessed," an IRS supervisor no longer has discretion to approve or disapprove of the assessment.

**[5]** The Tax Court stated that the Commissioner's interpretation of § 6751(b)(1) is "contradict[ed]" by the Second Circuit's opinion in *Chai*. We disagree. The *Chai* court held that "§ 6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." *Chai*, 851 F.3d at 221. The court reasoned that "[i]f supervisory approval is to be required at all, it must be the case that the approval is obtained when the supervisor has the discretion to give or withhold it." *Id.* at 220. Because the penalty at issue in *Chai* was subject to the Code's deficiency regime, "the last

Taxpayer defends the Tax Court's ruling that § 6751(b)(1) requires supervisory approval before the IRS formally communicates a proposed penalty to a taxpayer. The problem with Taxpayer's and the Tax Court's interpretation is that it has no basis in the text of the statute. Section 6751(b)(1) "contains no express requirement that the written approval be obtained at any particular time prior to assessment." *Chai*, 851 F.3d at 218. The statute does not make any reference to the communication of a proposed penalty to the taxpayer, much less a "formal" communication.

Taxpayer quotes a portion of the Tax Court's opinion, which may be construed as a textual argument relying on the word "initial":

> [I]f the *initial* determination of penalty liability is made and formally communicated *before* the notice of deficiency, and if that liability is ultimately included in the notice of deficiency, then supervisory approval right before issuance of the notice of deficiency may be too late . . . because at that point [the supervisor] is approving not the '*initial*

---

moment the approval of the initial determination actually matters is immediately before the taxpayer files suit (or penalties are asserted in a Tax Court proceeding)," *id.* at 221, because, as discussed in footnote 4, *supra*, after that point the IRS loses discretion whether to assess a penalty. The court ultimately concluded that "because a taxpayer can file a tax court petition at any time after receiving a notice of deficiency, the truly consequential moment of approval is the IRS's issuance of the notice of deficiency (or the filing of an answer or amended answer asserting penalties)." *Id.* But the § 6707A penalty at issue here is not subject to the I.R.C.'s deficiency regime.

determination' but something more like a
*final* determination.

However, the language of the statute provides no reason
to conclude that an "initial determination" is transformed
into "something more like a final determination" simply
because the revenue agent who made the initial
determination subsequently mailed a letter to the taxpayer
describing it. We think "initial," as used in § 6751(b)(1)'s
phrase "initial determination," more naturally indicates that
a subordinate's determination to assert a penalty lacks the
imprimatur of having received supervisory approval, rather
than that the determination has not yet been formally
communicated to the taxpayer. Moreover, Taxpayer does
not argue that the "determination" that Supervisor Korzec
approved differed in any way from RA Czora's initial
determination to assert the § 6707A penalty. Finally, this
case does not involve a notice of deficiency, which, as
discussed above, could limit a supervisor's discretion to
prevent the assessment of a penalty.[6]

---

[6] Ordinarily, when we interpret a statute as imposing a particular
rule, we locate the key terms of that rule in the statute's text. The
dissenting opinion interprets § 6751(b)(1) as imposing a rule that
supervisory approval must precede the first communication made to a
taxpayer that "purport[s] to impose a penalty unless objected to."
Dissent op. 21, 23 n.3. But this rule is made up of key terms or
requirements that cannot be found anywhere in the language of the
statute: (1) a communication to a taxpayer, (2) the content of that
communication that a penalty "will go into effect unless objected to,"
and (3) the requirement that approval must come before the
communication is made. At best, the dissent appears to treat the phrase
"initial determination of [an] assessment" as though it simply *means* the
government's "opening bid" to a taxpayer that an "assessment [is] to go
into effect automatically . . . unless contested by the taxpayer." *See*
Dissent op. 21. But a determination that a penalty should be assessed

Taxpayer also argues that the legislative history of § 6751(b)(1) supports its interpretation because the *Chai* court found that "[t]he statute was meant to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle."   851 F.3d at 219; *see also* S. Rep. No. 105-174, at 65 (1998) ("The Committee believes that penalties should only be imposed where appropriate and not as a bargaining chip.").

We are troubled by the language of the letter and the attachments Taxpayer received, which include the statements that (1) if Taxpayer took no action by the 30-day response date "we will assess the penalty and begin collection procedures," (2) that it is the "government's position" that "[t]he Taxpayer is subject to the penalty under section 6707A," and (3) that the "Taxpayer is liable for the penalty under section 6707A in the amount of $96,900.00."[7] A natural interpretation of the letter is that, in absence of action from Taxpayer, "we [the IRS] will [ineluctably] assess the penalty."  As it turns out, the letter's threat was premature because a supervisor had not yet approved the initial determination.[8]  But the recipient would not know this

---

and a communication to a taxpayer threatening the automatic assessment of a penalty are two different things, and the statute addresses only the former.

[7] We note that the IRS's "30-day letter is a form letter," 26 C.F.R. § 601.105(d)(1)(iv), and therefore that the threatening language in the letter Taxpayer received was probably standardized and not initially authored by the revenue agent in this case.

[8] The dissent misstates the majority's position as requiring that the 30-day letter "essentially . . . lied to the taxpayer" on the grounds that "despite, what the letter said, the subordinate who signed the letter had *no* authority to make a tentative determination that would become effective unless objected to by the taxpayer, whether the determination

from what was written in the letter. And a taxpayer in a similar position that received such a letter might be misled about the probability of the assessment of the penalty as calculated in the letter and, for this reason, more inclined to settle. We agree with Taxpayer that a law that prevented a non-supervisor revenue agent from formally communicating a proposed penalty to a taxpayer without first receiving supervisory approval would probably reduce the likelihood of a revenue agent threatening an unjustified penalty to secure a settlement.

However, we "undertake to apply the law as it is written, not to devise alternative language that might accomplish Congress's asserted purpose more effectively. 'Our task is to apply the text, not to improve upon it.'" *Salisbury v. City of Santa Monica*, 998 F.3d 852, 859 (9th Cir. 2021) (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126

---

was in fact approved by a supervisor or not." Dissent op. 19. We agree with the dissent that if the supervisor had approved the initial determination before the letter was sent, the letter would not have made a threat that was premature in light of § 6751(b)(1).

The dissent relies upon the terms of the 30-day letter as "indicative" of "the agency's actual practice." Dissent op. 20, 24. But, like the majority, the dissent is committed to the view that the letter was incorrect because it stated that absent action from Taxpayer the penalty would be validly assessed. At any rate, the best indication of the agency's actual practice is what the agency did, not what it said in a recycled form letter. And, here, the supervisor approved the penalty determination and then forwarded the case to the Appeals Office while noting the receipt of the Taxpayer's "written protest" in response to the 30-day letter, all without any indication that it would be unusual for the supervisor's approval to come about a month after a written protest challenging a 30-day letter.

(1989)).  And, here, the language of § 6751(b)(1) does not support Taxpayer's interpretation of the statute.[9]

Accordingly, we hold that § 6751(b)(1) requires written supervisory approval before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment.  Since, here, Supervisor Korzec gave written approval of the initial penalty determination before the penalty was assessed and while she had discretion to withhold approval, the IRS satisfied § 6751(b)(1).

## IV.  CONCLUSION

For the reasons stated above, the Tax Court's grant of Taxpayer's motion for summary judgment is **REVERSED**

---

[9] Moreover, the Commissioner's interpretation appears to be at least consistent with the legislative history of this statute because ensuring that no penalties determined by a subordinate official can be assessed without the supervisor's approval—not even as part of an administrative settlement—furthers to some extent the purpose Taxpayer attributes to the law: that penalties not be used improperly as leverage for settlement.

The dissent raises further questions about why Congress would "invoke the concept of approval," rather than simply providing that only a supervisor may make a determination to assess a penalty.  Dissent op. 22.  The Civil Penalty Approval Form in the record provides some answers.  This document reveals that, before approving the penalty determination, the supervisor reviewed the revenue agent's calculations of the amount of the penalty and attested in a written document to the reasons and statutory basis for asserting the penalty.  It may be a virtue of the supervisory approval requirement, and not a vice of our interpretation as the dissent suggests (*see* Dissent op. at 21), that a revenue agent is tasked with building a case for asserting a penalty, which a supervisor only approves or disapproves.

and **REMANDED** for proceedings consistent with this opinion.

---

BERZON, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the judgment of the Tax Court, although my reasoning is somewhat different from that of the Tax Court.

The factual context here is informative regarding what the statute we must interpret means. The taxpayer in this case received a letter signed by a subordinate Internal Revenue Agent, presenting the "government's position" that the "Taxpayer is subject to the penalty under section 6707A," and stating that the "Taxpayer is liable for the penalty under section 6707A in the amount of $96,900." The letter presented the taxpayer with three options: (1) "agree to the assessment" and pay the penalty, (2) "request a conference with our Appeals Office" by forwarding a "written protest," or (3) "do nothing" by the 30-day response date, in which case "we will assess the penalty and begin collection procedures."

The penalty determination was, according to the letter, a conditionally operative one that, the letter reported, would become automatically effective unless the taxpayer objected to it. The letter presented the taxpayer with options carrying potentially irreversible consequences: if the taxpayer acceded to the penalty or did nothing, any right to challenge the penalty would be lost.

The statutory provision at issue in this case, section 6751(b)(1), instructs that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is

personally approved (in writing) by the immediate supervisor of the individual making such determination . . . ." 26 U.S.C. § 6751(b)(1). Here, although the penalty determination of $96,900 was announced in the letter to be operative in the sense I have described, it is undisputed that the subordinate agent's supervisor had not approved the determination before the subordinate sent the 30-day letter to the taxpayer.

The majority and the government read section 6751(b)(1) as unambiguously allowing this gap, by permitting the required supervisory approval of an initial penalty determination to come *after* the taxpayer is told that the determination has become conditionally operative. To accommodate this view, the majority treats the 30-day letter sent in this case as essentially having lied to the taxpayer. On the majority's view, despite what the letter said, the subordinate who signed the letter had *no* authority to make a tentative determination that would become effective unless objected to by the taxpayer, whether the determination was in fact approved by a supervisor or not.[1] Majority op. 15–16, 17.

---

[1] The majority notes that it "agree[s] with the dissent that if the supervisor had approved the initial determination before the letter was sent, the letter would not have made a threat that was premature in light of § 6751(b)(1)." Majority op. 15 n.8. But the majority's position is that, in the circumstances of this case, the supervisor had the authority to approve or disapprove of the penalty determination until the "moment of assessment." *Id.* at 11–12, 17. Under that view, the determination conveyed in the letter could not have been operative—even if approved by a supervisor—because the supervisor retained the authority to change the determination until the penalty was formally assessed by recording it on the tax rolls. *See* n.2, *infra*.

It is to me substantially more likely that the form letter used in this case is indicative of how the Internal Revenue Service actually operates. That is, the agency *does* treat initial determinations such as the one presented in the 30-day letter as automatically effective unless objected to. The agency's practice thus informs the meaning of the statute, which, carefully read, does not clearly have the unlikely meaning the majority adopts.

In my view, there are several reasons the majority's reading of the statute must be incorrect and why, properly read, the statute requires supervisory approval *before* an initial determination can be communicated to the taxpayer as operative in the sense I have described. I begin with what the statute does *not* say. It does *not* say that no penalty shall be assessed *until* the initial determination of such assessment is personally approved by a supervisor. It says "[n]o penalty . . . shall be assessed *unless* the initial determination of such assessment is personally approved (in writing)" by a supervisor. 26 U.S.C. § 6751(b)(1) (emphasis added). Unlike the word "until," the word "unless" is not a temporal limitation but a substantive one; it tells us that A may not happen "unless" B happens. Here A is the assessment of penalties and B is personal approval by a supervisor of an initial determination by a subordinate. So section 6751(b)(1) provides a remedy for the taxpayer if the rule requiring approval as a condition of an enforceable *initial* determination is not followed, even if the supervisory approval of a later, *final* determination (e.g., pursuant to the letter received by the taxpayer in this case, a determination following an objection by the taxpayer to the initial determination) occurs at a time when approval can still be withheld. That is, absent such approval of the initial determination, "[n]o penalty . . . shall be assessed."

Nor does the statute say that the *assessment* must be personally approved[2] or even that the *determination* of the assessment must be personally approved. It says the "initial determination" of such assessment by "the individual making *such determination*" must be personally approved in writing by a supervisor. *Id.* (emphasis added). "Such determination" refers back to the "initial determination." So *that* determination, not the final determination, is what must be approved by a supervisor. The letter sent to the taxpayer in this case is illustrative of a "determination of [an] assessment" made by a subordinate, who signed the determination. And the determination was "initial" in the sense that it operated as an opening bid by the government; the assessment was to go into effect automatically—that is, be formally recorded on the tax rolls, *see* n.2, *supra*—unless contested by the taxpayer.

Congress must have used the phrase "*initial* determination" for a reason. (Emphasis added.) The "canon against surplusage . . . requires a court, if possible, to give effect to each word and clause in a statute." *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021) (citing *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001)). The majority proposes that the word "initial" "indicates that a subordinate's determination to assert a penalty lacks the imprimatur of having received supervisory approval." Majority op. 14. With respect, reading "initial" to mean "not yet approved" raises more questions than it answers.

According to the majority's reading of the statute, approval is not required until the moment before the penalty

---

[2] As the majority explains, a penalty is "assessed" when it is formally recorded on the tax rolls. Majority op. 11 (citing *Chai v. Commissioner*, 851 F.3d 190, 218 (2d Cir. 2017)).

is finally assessed. In other words, the supervisor must approve the *final* penalty determination, here, one made after the taxpayer has had an opportunity to contest the initial determination. But why, then, does the statute refer to the "initial determination"? Why would Congress refer to "the individual making such determination," if that individual was only making recommendations to a superior, not interacting with the taxpayer in a manner meant to have determinative consequences for the taxpayer? And why would Congress invoke the concept of approval? Surely it would be much simpler to say that an official in a supervisory role (or at a particular level) must make the determination to assess penalties—that is, to record the penalties on the tax rolls.

Moreover, if Congress's concern really were that only a supervisor should make a final assessment determination, then why would Congress care whether that final determination took the form of an approval of a subordinate's initial determination? What if the supervisor disagreed with the initial determination and wanted to impose a different penalty? Why would Congress have specified *how* a supervisor ought to reach such a final determination? The reason for these provisions is opaque under the majority's reading of the statute but evident once it is understood that an "initial determination" may be communicated to the taxpayer as generating an obligation to pay the penalty absent objection—as the 30-day letter in this case made quite explicit.

In my view, then, the statute means what it says: a supervisor must personally approve the "initial determination" of a penalty by a subordinate, or else no penalty can be assessed based on that determination, whether the proposed penalty is objected to or not. 26 U.S.C.

§ 6751(b)(1). That meaning is consistent with Congress's purpose of preventing threatened penalties never approved by supervisory personnel from being used as a "bargaining chip" by lower-level staff, S. Rep. No. 105-174, at 65 (1998); *see Chai v. Commissioner*, 851 F.3d 190, 219 (2d Cir. 2017), which is exactly what happened here.

Here, the initial determination conveyed in the 30-day letter was meant to be an operative one for the several reasons explained by the majority: the letter said "that (1) if Taxpayer took no action by the 30-day response date 'we will assess the penalty and begin collection procedures,' (2) that it is the 'government's position' that '[t]he Taxpayer is subject to the penalty under section 6707A,' and (3) that the 'Taxpayer is liable for the penalty under section 6707A in the amount of $96,900.00.'" Majority op. 15. Because the letter made clear that the initial determination would have operative effect unless objected to, supervisory approval was required at a time when it would be meaningful—before the letter was sent.[3]

In contrast, the reading of the statute advanced by the government and adopted by the majority would in many instances make the approval requirement a mere formality. That interpretation would, in normal circumstances, allow the penalty determination to be approved or disapproved until the moment it was assessed (*i.e.*, recorded on the tax

---

[3] I note that, in this respect, my interpretation differs from the Tax Court's understanding. In my view, approval is not required before there is *any* communication to the taxpayer but before there is an operative decision—one that will go into effect unless objected to. So, for example, were a letter sent to a taxpayer that set out a proposed assessment but did not purport to impose a penalty unless objected to, there would not, in my view, be the sort of "initial determination" of a penalty requiring prior supervisory approval.

rolls),[4] even after the Appeals Office had held a conference to resolve any protest—and perhaps even if the Appeals Office *disagreed* with the initial determination, as the government acknowledged at oral argument. If the approval requirement for the "initial determination" really could be satisfied so late in the game, it would be either a pointless requirement or a perverse one. Rather than interpret the statute as senseless, I would interpret it in the way that accords with its language, the agency's actual practice, as described above, and Congress's purpose in enacting the requirement. I therefore respectfully dissent.

---

[4] The majority acknowledges that "an earlier deadline for supervisory approval might be required when the penalty at issue is subject to the [Internal Revenue Code]'s deficiency regime," apparently because under that regime the Code prescribes that a proposed "deficiency . . . shall be assessed" if the taxpayer does not timely object to it, relieving "an IRS supervisor [of] discretion to approve or disapprove of the assessment." Majority op. 12 & n.4 (quoting 26 U.S.C. § 6213(c)). But the "penalty at issue in this case is not subject to the [Code]'s deficiency procedures." *Id.* at 12.