**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 30, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

GEORGE S. HARRINGTON,

    Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 22-9000
(CIR No. 13531-18)
(U.S. Tax Court)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

George S. Harrington, proceeding pro se,[1] appeals a decision of the Tax Court

concluding he was liable for deficiencies and fraud on his income tax forms due to

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Harrington proceeds pro se, we construe his arguments liberally, but we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

unreported offshore assets from 2005 to 2009.  Exercising jurisdiction under 26 U.S.C. § 7482(a)(1), we affirm.

## BACKGROUND

Mr. Harrington is a United States citizen.  Now retired, he spends half of the year in the United States and half of the year in New Zealand.  In his original income tax returns for tax years 2005 through 2009, he reported income from bank accounts in New Zealand.  He also filed Reports of Foreign Banks and Financial Accounts, (FBARs) pursuant to the Bank Secrecy Act, 31 U.S.C. § 5314, for those accounts.

In 2009, UBS AG, a Swiss multinational investment and financial services company, entered into a deferred prosecution agreement with the United States Department of Justice in connection with charges of participating in conspiracy to defraud the United States by "actively assisting or otherwise facilitating a number of United States individual taxpayers in establishing accounts at UBS in a manner designed to conceal the United States taxpayers' ownership or beneficial interest in these accounts."  Deferred Prosecution Agreement at 2, *United States v. UBS AG*, No. 09-60033-CR-COHN (S.D. Fla. Feb. 18, 2009), ECF No. 20.  Per this agreement, UBS provided the Department of Justice information regarding a number of its account holders, including Mr. Harrington.

Relying in part on information UBS disclosed through this agreement, in 2012 revenue agent Jane McManus opened an examination into Mr. Harrington's tax returns.  Ms. McManus concluded Mr. Harrington had unreported income in the form

of dividends, interest, and capital gains from previously unreported foreign accounts in the Cayman Islands.

Two years into the examination, in 2014, Mr. Harrington submitted to Ms. McManus amended tax returns for tax years 2005, 2006, 2007, 2008, 2009, and 2010. Mr. Harrington signed the amended returns, declaring "to the best of [his] knowledge and belief," they were "true, correct, and complete." *See* R. vol. 9 at 81 (attestation for 2005 amended return); *see also id.* at 89, 100, 110, 126, 136 (same for 2006, 2007, 2008, 2009, and 2010 amended returns). The amended returns disclosed Mr. Harrington's interest in the previously unreported accounts. He also submitted updated FBARs for those accounts for those years. *See id.* vol. 4 at 121–200.

Ms. McManus calculated the amount of unreported income and prepared a memorandum recommending the imposition of civil fraud penalties from 2005 to 2010. Her supervisor, Kimberly Slack, signed a Civil Penalty Approval Form and dated it March 17, 2016. By letter dated April 20, 2016, Ms. McManus informed Mr. Harrington of the proposed tax deficiencies and fraud penalties based on her examination.

Mr. Harrington filed a petition for redetermination in the United States Tax Court challenging the assessed deficiencies and penalties. The Tax Court held a one-day hearing at which Mr. Harrington and Ms. McManus testified. After the hearing, the Tax Court sustained the assessments and penalties for all tax years except 2010. This appeal followed.

## DISCUSSION

"[W]e review the tax court's findings of fact under a clearly erroneous standard while questions of law are reviewed de novo." *Cox v. Comm'r*, 514 F.3d 1119, 1123 (10th Cir. 2008). When reviewing for clear error, "[t]he Circuit Courts of Appeal have no power to change or add to . . . findings of fact or to reweigh the evidence." *Comm'r v. Scottish Am. Inv. Co.*, 323 U.S. 119, 124 (1944). Mr. Harrington raises three arguments on appeal. He argues (1) the Tax Court erred in finding fraud in connection with his tax returns for 2005–09, (2) the statute of limitations barred assessment of taxes for those years, and (3) Ms. McManus did not obtain the necessary supervisory approval before assessing fraud penalties. We consider each argument in turn.

### 1. *Finding of Fraud*

Mr. Harrington argues the Tax Court erred in finding he underpaid taxes for tax years 2005 through 2009 and in finding his originally filed returns were fraudulently filed with the intent to evade payment of income tax. In particular, he argues the Tax Court should not have considered his amended returns as evidence of underreported income for those tax years because he "submitted later amended return forms by mistake at the demand of [Ms. McManus] and the erroneous advice of his counsel." Aplt. First Am. Opening Br. at 10.

But "[i]t has been held repeatedly that positions taken in a tax return signed by a taxpayer may be treated as admissions." *Mendes v. Comm'r*, 121 T.C. 308, 312 (2003). The Tax Court considered Mr. Harrington's testimony that he submitted

the amended returns at Ms. McManus's request, but it weighed that testimony against Ms. McManus's express denial that she requested him to provide those returns. And we will not reweigh that evidence on appellate review. *See Scottish Am. Inv. Co.*, 323 U.S. at 124.

As to the finding of fraud, "[f]raud means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." *Zell v. Comm'r*, 763 F.2d 1139, 1142–43 (10th Cir. 1985) (internal quotation marks omitted). "If the [Commissioner] establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud." I.R.C. § 6663(b). Because "[t]he existence of fraud is ordinarily not susceptible of direct proof[,] [it] must generally be determined from surrounding inferences and circumstances fairly deductible from the conduct of the parties." *Koscove v. Comm'r*, 225 F.2d 85, 87 (10th Cir. 1955). The Tax Court therefore reviewed Mr. Harrington's entire course of conduct to determine whether there existed

> "badges of fraud," includ[ing,] but . . . not limited to:
> (1) understating income, (2) keeping inadequate records,
> (3) giving implausible or inconsistent explanations of
> behavior, (4) concealing income or assets, (5) failing to
> cooperate with tax authorities, (6) engaging in illegal
> activities, (7) supplying incomplete or misleading
> information to a tax return preparer, (8) providing
> testimony that lacks credibility, (9) filing false documents
> (including false tax returns), (10) failing to file tax returns,
> and (11) dealing in cash.

R. vol. 10 at 381.  The Tax Court found that badges 6, 7, 10, and 11 were inapposite, but that badges 1–5, 8, and 9 were present and demonstrated Mr. Harrington acted with fraudulent intent.  Based in part on the amended tax returns as well as the records obtained through UBS's deferred prosecution agreement, the Tax Court found that Mr. Harrington substantially understated his income for the tax years in question; that he provided changing and implausible explanations regarding the accounts to Ms. McManus during her examination, including the false claim that he never received account statements; that he held millions of dollars in offshore UBS accounts in the names of shell companies and fictitious entities situated in tax havens; that his shifting and misleading statements to Ms. McManus evidenced a failure to cooperate; that he did not testify credibly; and that the original tax returns he filed were false.

In challenging these findings on appeal, Mr. Harrington primarily restates arguments he made in his post-trial briefing before the Tax Court.  He argues that his testimony was, in fact, plausible and consistent; that he never exercised ownership or control over assets in the offshore accounts; that he cooperated with Ms. McManus during her examination; and that his originally filed tax returns, which did not acknowledge any ownership in the offshore accounts, were true and correct.  At most, though, these arguments establish the Tax Court could have reached different factual conclusions than it in fact did reach.  We cannot change the factual findings of the Tax Court, *see Scottish Am. Inv. Co.*, 323 U.S. at 124, so we reject Mr. Harrington's invitation to do so here.

### 2. *Statute of Limitations*

Mr. Harrington also argues the statute of limitations had run on the Commissioner's authority to impose the tax assessments. But I.R.C. § 6501(c)(1) provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed . . . at any time." Because we affirm the findings of the Tax Court that Mr. Harrington's initially filed returns were false and fraudulent with the intent to evade tax, we likewise affirm its conclusion that the statute of limitations did not bar the assessment.

### 3. *Supervisory Approval of Fraud Penalty*

Mr. Harrington finally argues the penalty assessments were void for failure to obtain prior supervisory approval. I.R.C. § 6751(b) provides that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." There is an emerging split of authority over when, precisely, this provision requires supervisory approval for the imposition of fraud penalties.

The Tax Court has held § 6751(b) requires supervisory approval before the revenue agent formally communicates the decision to impose penalties to the taxpayer. *See Belair Woods, LLC v. Comm'r*, 154 T.C. 1, 14–15 (2020). The Ninth Circuit has rejected this interpretation, holding § 6751(b) simply requires such approval "before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066, 1074 (9th Cir. 2022). We do

7

not need to resolve this issue here, though, because the Tax Court applied its more restrictive interpretation of the rule and nonetheless found the agency complied with it.

Ms. McManus testified, and the Tax Court found, that she obtained supervisory approval on March 17, 2016, before sending Mr. Harrington a notice of deficiency on April 20.  March 17 was the handwritten date next to Ms. Slack's signed approval.  Ms. McManus further supported her testimony with her case activity record and internal emails.  Mr. Harrington argues, as he did below, that Ms. McManus and Ms. Slack improperly backdated the supervisory approval form. In support of this argument, he points to a typewritten date of June 14, 2016, in the upper corner of the form.

But the Tax Court considered and rejected this factual claim, finding "[t]here is no evidence to suggest that [Ms. McManus] and her supervisor engaged in a concerted effort to falsify documents."  R. vol. 10 at 375.  Moreover, the Tax Court applies a presumption of regularity to official acts.  This presumption "supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Pietanza v. Comm'r*, 92 T.C. 729, 739 (1989), *aff'd*, 935 F.2d 1282 (3d Cir. 1991). The Tax Court found Mr. Harrington did not overcome that presumption here.  We do not have the power to second-guess these factual determinations, *see Scottish Am. Inv. Co.*, 323 U.S. at 124, so we reject this argument.

8

**CONCLUSION**

We affirm the judgment of the Tax Court.


Entered for the Court


Nancy L. Moritz
Circuit Judge