# United States Tax Court

T.C. Memo. 2025-79

RIVER MOSS PROPERTY, LLC,
RIVER MOSS MANAGEMENT, LLC,
PARTNERSHIP REPRESENTATIVE,
Petitioner
v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 7324-24.                              Filed July 22, 2025.

————————

*Patricia E. Carbone*, *Nicholas R. Metcalf*, *Sean T. Morrison*, and *Jeffrey A. Neiman*, for petitioner.

*Andrew Yamanaka Belter*, *Kerrington A. Hall*, *Richard J. Hassebrock*, *Louis H. Hill*, *Matthew T. James*, *Allison N. Kruschke*, *Timothy A. Lohrstorfer*, *Joseph E. Nagy*, and *Alexandra E. Nicholaides*, for respondent.

## MEMORANDUM OPINION

JENKINS, *Judge*: This case involves a charitable contribution deduction claimed for the 2019 tax year by River Moss Property, LLC (River Moss), in connection with its donation of a conservation easement. The Internal Revenue Service (IRS) issued a Notice of Final Partnership Adjustment (FPA) disallowing the deduction and determining an imputed underpayment and penalties. Before this Court is respondent's Motion for Partial Summary Judgment (Motion) contending that the IRS complied with the supervisory approval

[*2] requirements under section 6751(b)(1)[1] with respect to the penalties at issue. For the reasons discussed herein, the Motion will be granted.

*Background*

The following facts are based on the parties' pleadings, the Motion and Response papers, and the declarations and Exhibits attached thereto. The facts are stated solely for purposes of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

River Moss is a Missouri limited liability company that is treated as a partnership for federal income tax purposes. For the 2019 tax year, River Moss is subject to the centralized partnership audit regime created by the Bipartisan Budget Act of 2015 (BBA).[2] Its partnership representative is River Moss Management, LLC (RM Management). River Moss had its principal place of business in Florida when the Petition was timely filed.

River Moss acquired a tract of land in Jefferson Davis Parish, Louisiana, in 2018. In December 2019, River Moss granted to the Barn Group a conservation easement over the property. River Moss timely filed Form 1065, U.S. Return of Partnership Income, for its 2019 tax year, claiming a charitable contribution deduction of approximately $60 million in connection with its donation of the easement.

The IRS selected River Moss's 2019 Form 1065 for examination, and in July 2021 the case was assigned to Revenue Agent (RA) Elijah P.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In 2015, Congress enacted the BBA, Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625–38, which amended the Code by striking the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, and enacting new provisions using many of the same Code section numbers as TEFRA. BBA § 1101(a), (c)(1), 129 Stat. at 625–37. The BBA provides a centralized method for auditing, adjusting, assessing, and collecting tax from partnerships. The BBA procedures are intended to streamline the audit process for partnerships by allowing audits, adjustments, and payments to all occur at the partnership level. *See* § 6221(a); *SN Worthington Holdings LLC v. Commissioner*, 162 T.C. 228, 233 (2024). The BBA generally applies for taxable years beginning after December 31, 2017, *see* BBA § 1101(g)(1), 129 Stat. at 638, and BBA partnerships, including River Moss, are subject to special tax and audit rules, *see* §§ 6221–6241.

[*3] Mallery in the Large Business & International Division. On August 24, 2021, the IRS sent a Notice of Administrative Proceeding related to the 2019 Form 1065. During his examination, RA Mallery made the initial determination to assert penalties against River Moss under sections 6662 and 6662A.[3] The section 6662 penalty was asserted on the basis of section 6662(h) or, alternatively, section 6662(c), (d), or (e). RA Mallery's determinations were set forth in a penalty lead sheet, a copy of which is attached to a declaration submitted in support of the Motion. On September 12, 2022, Joseph C. Sustaita affixed his digital signature to the penalty lead sheet. On the penalty lead sheet, and in a declaration submitted in support of the Motion, Mr. Sustaita verified that he was the "immediate supervisor" of RA Mallery, who made the initial determination to assert the penalties, and that with his signature, Mr. Sustaita approved the initial determination. Mr. Sustaita's title as stated on the penalty lead sheet beneath his digital signature is "Group Manager – Team 1245."

On April 5, 2023, the IRS issued River Moss and RM Management Notices of Proposed Partnership Adjustment (NOPPA), which set forth the proposed adjustments, the resulting imputed underpayment, and penalties. The NOPPA constituted the first formal communication to River Moss and RM Management that the IRS intended to assert the section 6662 penalty. Approximately ten months later, on February 8, 2024, the IRS issued the FPA disallowing River Moss's charitable contribution deduction for the conservation easement and determining an imputed underpayment and the aforementioned penalty.

Petitioner timely petitioned the Court for readjustment. In the Answer, respondent affirmatively asserted a civil fraud penalty under section 6663(a). Senior Counsel Richard J. Hassebrock recommended assertion of that penalty by including it in the Answer. Mr. Hassebrock's immediate supervisors, Associate Area Counsel Louis H. Hill and Strategic Litigation Counsel Alexandra E. Nicholaides, approved the civil fraud penalty in writing on July 5, 2024, by signing the Answer. The Answer constituted the first formal communication to River Moss and RM Management that the IRS intended to assert the section 6663 penalty.

---

[3] In the Motion respondent conceded the section 6662A penalty, and therefore it will not be discussed further.

**[*4]**                          *Discussion*

I.     *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly and unnecessary trials. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). The Court may grant summary judgment or partial summary judgment regarding an issue if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. A partial summary adjudication is appropriate if some but not all issues in the case may be decided as a matter of law, even though not all the issues in the case are disposed of. *See* Rule 121(a)(1); *Turner Broad. Sys., Inc. & Subs. v. Commissioner*, 111 T.C. 315, 323–24 (1998). In deciding whether to grant summary judgment, the Court construes factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, the nonmoving party "may not rest on the allegations or denials" in the nonmoving party's pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

II.    *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Absent stipulation to the contrary, *see* § 7482(b)(2), appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit, *see* § 7482(b)(1)(E), and this Court follows its precedent, *see Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). The Eleventh Circuit in *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, held that "the IRS satisfies [s]ection 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties."

Under this articulation, "supervisory approval could seemingly be secured at any moment before actual assessment of the tax." *Salacoa Stone Quarry, LLC v. Commissioner*, T.C. Memo. 2023-68, at *4. The Eleventh Circuit did, however, leave open the possibility that supervisory approval in some cases might need to be secured sooner, i.e., before the supervisor "has lost the discretion to disapprove" the penalty

[*5] determination. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1 (citing *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1072 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020)); *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1074 (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment").

The record establishes that RA Mallery made the initial determination to assert the section 6662 penalty and secured timely approval for this penalty from his immediate supervisor, Mr. Sustaita. The record also establishes that Mr. Hassebrock made the initial determination to assert the civil fraud penalty under section 6663(a) and secured timely approval for this penalty from his immediate supervisors, Mr. Hill and Ms. Nicholaides. Petitioner does not dispute the latter proposition, which is consistent with the Court's holdings, *see, e.g.*, *Braen v. Commissioner*, T.C. Memo. 2023-85, at *26; *Koh v. Commissioner*, T.C. Memo. 2020-77, at *5; *Roth v. Commissioner*, T.C. Memo. 2017-248, at *10–11, *aff'd*, 922 F.3d 1126 (10th Cir. 2019), so this Court will confine its further discussion to the section 6662 penalty determined by RA Mallery.

Respondent has supplied a copy of the penalty lead sheet setting forth the initial penalty determination, as well a declaration from RA Mallery averring under penalty of perjury that he was assigned to the income tax examination of River Moss's 2019 Form 1065, and that he "made the initial determination to assert penalties against [River Moss] including penalties pursuant to . . . §§ [sic] 6662(h), 6662(e), 6662(c), and 6662(d)."

The record establishes that Mr. Sustaita was RA Mallery's "immediate supervisor." RA Mallery has averred under penalty of perjury that Mr. Sustaita was his immediate supervisor. Mr. Sustaita has also averred: "I was [RA] Mallery's immediate supervisor and had authority to approve or not approve his penalty determination . . . . On September 12, 2022, I approved [RA] Mallery's initial determination to impose the penalties . . . for taxable year 2019 against [River Moss]." *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination).

The record further establishes that Mr. Sustaita timely reviewed and approved the initial penalty determination in writing. On

[*6] September 12, 2022, he digitally signed the penalty lead sheet, identifying himself as Group Manager. A manager's signature on a penalty approval form is sufficient to satisfy the statutory requirements. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 17 (2020).

Petitioner attempts to raise a dispute of material fact regarding the section 6751(b) supervisory approval requirement by asserting that "discrepancies between the declarations and the documentation" exist. Although respondent contends that penalty approval occurred on September 12, 2022, petitioner asserts that documentation produced by respondent indicates that penalty approval occurred two days later, on September 14, 2022. In support, petitioner offers two screenshots. The first reflects metadata from the penalty lead sheet indicating that the document was created and last modified at 6:45 p.m. on September 14, 2022. The second reflects an email from Mr. Sustaita to RA Mallery at 3:13 p.m. on September 14, 2022. The email's subject line reads "RE: Penalty approval leadsheet – RIVE," and the body of the email contains only one word, "Approved," and it contains an attachment titled "SAIN 011 Leadsheet – RIVE – 201912 (signed)." Accordingly, argues petitioner, summary judgment is inappropriate.

This Court is not convinced by petitioner's efforts to manufacture a discrepancy. The information before this Court shows that supervisory approval occurred more than six months before the issuance of the NOPPA on April 5, 2023, which, as noted, was the IRS's first formal communication regarding the determination of the section 6662 penalty. Petitioner does not contest that RA Mallery made the initial determination and that Mr. Sustaita was RA Mallery's immediate supervisor; nor does petitioner contest that penalty approval was actually given in September 2022. The penalty lead sheet indicates that Mr. Sustaita affixed his digital signature to it on September 12, 2022, and Mr. Sustaita submitted a declaration in which he avers under penalty of perjury that he was RA Mallery's immediate supervisor and that he approved RA Mallery's initial determination on September 12, 2022. Emailing and saving the signed penalty lead sheet would necessarily have followed the signature and need not have happened on the same date as it. And, in any event, petitioner does not contend that approval took place after September 14, 2022.

The NOPPA was issued on April 5, 2023, and the FPA was issued approximately ten months later on February 8, 2024. As of the date on which Mr. Sustaita approved the section 6662 penalty, the IRS examination remained at a stage in which he had discretion to approve

**[*7]** or disapprove the penalty determination. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1. Therefore, the IRS complied with section 6751(b)(1) because Mr. Sustaita timely approved the section 6662 penalty at issue and did so in writing.

Petitioner makes further attempts to defeat the conclusion supported by the documents before this Court by asserting that respondent's Motion is premature, that the Motion is an attempt to circumvent discovery and stipulation procedures, and that "the possibility exists that 'new evidence previously unavailable to petitioner' will come to light." Petitioner has issued informal discovery requests seeking information including a copy of the administrative file and all documents relating to the penalty determination, "including . . . all correspondence and Communications relating to the approval of any penalties."

This Court is mindful that parties must have an opportunity to conduct discovery and that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (noting that the nonmoving party must have had "a full opportunity to conduct discovery"). However, "the importance of the discovery in resolving the issues" must be taken into account, *see* Rule 70(b)(1), and a party that seeks denial of a motion for summary judgment must provide specificity as to why "it cannot present facts essential to justify its opposition," *see* Rule 121(e). Because the discovery that petitioner seeks to obtain is not essential to the resolution of the question currently before this Court, a decision on the Motion without additional discovery is not premature. *Cf. Caney v. Commissioner*, T.C. Memo. 2010-90, 2010 WL 1687679, at *2 (dismissing the argument that summary judgment was precluded given ongoing discovery, given that the taxpayers did not demonstrate that "further discovery would likely yield any fact essential to" the opposition of a summary judgment motion).

The record before this Court includes documents and declarations demonstrating that timely written supervisory approval was given. By requesting discovery of "all correspondence and Communications relating to the approval of any penalties," petitioner seeks to look beyond the signature appearing on the face of the penalty lead sheet. *See Patel v. Commissioner*, T.C. Memo. 2020-133, at *22 (refusing to "look behind the civil penalty approval form"). However, in TEFRA cases, the Court

**[\*8]** has repeatedly held that a manager's signature on a penalty approval form, without more, is sufficient to satisfy the statutory requirements and accordingly has decided summary judgment motions regarding the supervisory approval requirements under section 6751(b)(1) on the basis of IRS forms and records. *See, e.g., Sand Inv.*, 157 T.C. at 142–44; *Belair Woods*, 154 T.C. at 17 (collecting cases); *Ivey Branch Holdings, LLC v. Commissioner*, T.C. Memo. 2025-63, at \*9. There is no reason to deviate from the Court's precedent in this BBA case. *Cf. Jefferson Property Holdings, LLC v. Commissioner*, T.C. Memo. 2025-75, at \*8.

III.    *Conclusion*

In September 2022, the IRS examination remained at a stage in which Mr. Sustaita had discretion to approve or disapprove the penalty determination. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1. Accordingly, whether Mr. Sustaita approved RA Mallery's initial determination of the section 6662 penalty on September 12, 2022, or September 14, 2022, he approved it, in writing, at a time when he had discretion to approve or disapprove it. Thus, under *Kroner*, the IRS complied with section 6751(b)(1) in this case.

To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*